*Windsor, February, 1835.*

*Brown vs. Marsh.*

---

### Town of Plymouth *vs.* Town of Windsor.

*Windsor, February, 1835.*

If a woman, having no settlement in this state, pregnant with a bastard child, is procured by the overseers of the poor of the town where she resides, to go into another town to be delivered, and is there delivered—*Held*, That the child is considered as born in the town from which she is so procured to depart.

On the trial of this cause, which was appealed from an order of removal, the counsel for Plymouth gave evidence to the jury tending to prove, that Sally Winn, the pauper in question, was the bastard child of one Hannah Goodlip, a single woman, who, for about three years before the birth of said bastard, and to within about one month of her delivery of said child, lived in Windsor ;—that the said Hannah had previously lived with her mother in the town of Bridgewater, in the county of Windsor, from

WINDSOR,
*February,*
1835.

Plymouth
*vs.*
Windsor.

the age of eight years until within about four years previous to the birth of said pauper; and that the said Hannah went from said Bridgewater to the town of Hartland in said county, and there resided about one year next before she went to reside in said Windsor, as before stated;—that while the said Hannah was big with child, Messrs. Hunter and Hoisington, who were then two of the selectmen and overseers of the poor of said Windsor, applied to Joel Lull, who was then constable of said Windsor, and told him that the said Hannah was likely or about to be delivered of a bastard, and that he must see that she was removed out of town.

The counsel for Plymouth gave the evidence of *one* witness only; that the said Lull called on the said Hannah, and told her that she must leave town;—that the said Hannah expressed a desire to remain in said Windsor during her approaching lying-in, and that the said Lull told her that the selectmen would not allow of it.

But the counsel for Plymouth also gave the evidence of the said Lull, the only other witness on this point, that when he called on the said Hannah to convey her out of town, in pursuance of the said request of said selectmen, the said Hannah expressed a wish to him that he would carry her to said Bridgewater; and told him that her mother lived there;—that the said Lull thereupon carried the said Hannah to her mother's in said Bridgewater—the said mother then being the wife of one Bassett, who was not an overseer of the poor of said Bridgewater.

The counsel for Plymouth also gave evidence tending to prove, that the said Hannah was delivered of said bastard, the pauper, at said Bridgewater, in the month of June, 1806, about one month after the said Hannah was conveyed there by said Lull, as before stated; and that the said pauper went from said Bridgewater to said Plymouth on a visit, about three years ago, and there falling sick, became a charge upon said Plymouth, and has remained so ever since.

The counsel for Windsor gave evidence to the jury tending to prove, that the said Hannah had been duly warned to depart said town of Windsor, and had never gained a legal settlement therein.

There was no evidence in the case tending to show, nor was it contended, that the said Hannah had any legal settlement within this state at the time of her being so carried to Bridgewater, or that the said pauper had ever gained any legal settlement in her own right, unless it was by birth.

On the trial, the counsel for said town of Windsor contended, and requested the court to charge the jury.

1. That if they found that the said pauper had not its birth in said town of Windsor, and that the said Hannah Goodlip had not a legal settlement in said town of Windsor at the time she left said Windsor and went to said Bridgewater, they should find a verdict for said town of Windsor that said pauper was unduly removed.

2. That if said Hannah Goodlip went voluntarily and of her own accord to said Bridgewater, at the time she was conveyed there by said Lull, the town of Windsor would not, in law, be liable for the support of said pauper.

3. That if the said Hunter, Hoisington and Lull did not act in pursuance of the law in assisting the said Hannah Goodlip to remove from said town of windsor to said town of Bridgewater, their acts were not official, and would not be the acts of the town of Windsor; and as it regards the town of Windsor, would not be fraudulent in law; and

4. That upon the whole evidence, the said town of Windsor were entitled in law to a verdict of unduly removed.

But the court refused so to instruct the jury, but did instruct them, among other things, that if they found that the overseers of the poor of Windsor procured or caused the said Hannah to be carried or removed from said Windsor to said Bridgewater, when, without such procurement or conveying she would not have left said Windsor, then the said town of Windsor was liable, and the said pauper was duly removed, notwithstanding they should find that the said Hannah never had a legal settlement in said Windsor, and that she did express a wish to said Lull that he would carry her to said Bridgewater on his calling upon her to carry her out of said Windsor.

The jury found a verdict for Plymouth, that said pauper was duly removed.

The counsel for said Windsor excepted to the said decisions and charge and refusal to charge. Exceptions allowed, and the cause passed to this court for revision.

*Coolidge and Edgerton for Windsor*, insisted that the pauper in question is a bastard, and not having her birth in Windsor, Windsor is not chargeable for her support. The place of birth of a bastard is the place of settlement.

*Marsh and Aikens for Plymouth*.—The questions arising on the facts stated and found in this case, are,

1. Whether, under the circumstances attending the removal of

WINDSOR,
*February,*
*1835.*
—————
Plymouth
*vs.*
Windsor.

Hannah Goodlip to Bridgewater, and the consequent birth of Sally Winn, the pauper, in that place, gives her a settlement there.

2. Whether Hannah Goodlip, having no settlement in Windsor, or elsewhere in this state, her surreptitious and fraudulent removal by the procurement of the overseers of Windsor, in order that her child might be born in some other place, renders it proper and legal that any town where the child may become chargeable should remove her to Windsor.

As to the first question, it is scarcely to be believed that it will be contended that the pauper gained a residence, by birth, in Bridgewater.

By the statute of 1797, first section, it was declared that every bastard child should be deemed to be settled in the place of his or her mother's last legal settlement.—Comp. Laws, 370.

This section was, however, repealed by the statute of 1801, and this statute is wholly silent as to the settlement of illegitimate children. During the time that this statute was in force, the pauper, Sally Winn, was born, under the circumstances stated in the exceptions. This last statute was repealed by the act of 1817. This act can have no bearing on the question before the court, though it again enacts that illegitimate children shall have the settlement of their mother.—Comp. Laws, 381–3.

The pauper, having been born under the operation of the act of 1801, the question must be decided on general (not to say common law) principles; and on this point we are not without authorities.

The general rule is, that illegitimate children are settled where born; but to this rule, there are several exceptions.

The first exeption is, that if any fraud be used to procure the birth of a bastard child in any particular parish, such child shall be, *prima facie,* settled, not where born, but in the parish from whence its mother was fraudulently and collusively removed. This point is fully settled in the case of *Tewksbury* vs. *Twining.*—2 Bott's Poor Laws, 1, 2—2 Bott. 3.

So in the case of *Masters* vs. *Child :* If an unmarried woman with child of a bastard, and settled in one parish, is persuaded by the parish officers to go into another parish, on purpose to be there delivered, this fraud will make the parish chargeable where the mother was settled, though the child was not born there.—3 Bur. Just. 35, S. C.   3 Salk. 66.

So where a bastard is born, pending an order of removal, or in

jail, if the order be reversed, the child is not settled where born, but must follow the mother.—*Westbury* vs. *Cofton*, 2 Bott. 4.

WINDSOR,
*February*,
1835.

Plymauth
*vs.*
Windsor.

And in all the cases, any fraud or collusion in procuring the birth of a bastard child to happen in one place rather than another, takes the case out of the general rule that a bastard child is settled where born.—*The King* vs. *Astley*, 2 Bott. 10.

As to the second question, we think it equally clear, that the pauper ought to have been sent to Windsor, where the fraud or collusion was practised, from any town where she becomes chargeable.

It is a rule that no one can take advantage of his own fraud.—Windsor is estopped from saying that the child, if the mother had not been removed to Bridgewater, might, or would have been born in some other place than Windsor.

The mother, appearing to have no settlement in this state, could not have been removed to any other town, except in the manner she was removed to Bridgewater, in which case Windsor would have been liable in the same manner as now.

We have an authority in point in this part of the case, in the case already cited of *Tewksbury* vs. *Twining*, in which Sir William Jones, before whom the cause was tried, is reported to have said, "Illegitimate children must be kept by the parish in which they are born; but if any improper practice appears, then this rule doth fail, and the child shall be kept and provided for by the parish where the mother was got with child, and which used the practice, to have the child born, in another parish."—2 Bott. 1, 2.

"If a woman, pregnant of a bastard, be fraudulently removed by parish officers, for the purpose of preventing the bastard from becoming chargeable to their parish, the child is settled in the parish from which the mother was so removed; but not if the mother be so fraudently removed by a parishioner liable to pay rents, not being a parish officer."—*The King* vs. *The Inhabitants of Mattersey*, 24 Com. Law, 49.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—In this case, it appears, 1. That the pauper was a bastard child, born within the limits of the town of Bridgewater, and has gained no settlement except by birth.

2. That her mother, at the time the pauper was born, had no settlement in this state, but for the period of three years, and until about one month before the birth of the pauper, resided in the town of Windsor, and being there pregnant, the overseers of the poor of

Windsor,
*February*,
1835.

Plymouth
*vs.*
Windsor.

Windsor procured or caused her to be removed or carried to the town of Bridgewater, when without such procurement or carrying, she would not have left Windsor. It is admitted by both parties, that the place of birth of a bastard child, was the place of its settlement, at the time this child was born. The general policy of our law has been to give bastards the settlement of their mother. The rule of the common law, which treats them strictly as *nullius filius,* has been altered by our statutes, to a certain extent at least. Thus they are capable of inheriting and transmitting an inheritance on the part of the mother. Whether from the principles of our statute, the common law has been in any way altered or changed in regard to bastard children, any further than the statutes have particularly enacted, is not a question now to be decided, as it is conceded, that at the time of the birth of this bastard, there was no law which gave them the settlement of their mother, and also that an illegitimate child was at that time settled in the place where born. Now it is an admitted principle, that if a woman pregnant with a bastard child, is by the parish officers procured to go into another parish, and there be delivered, the child gains no settlement by birth in the parish to which the mother was fraudulently removed. The law terms this procurement or practice, where done by the officer of the town, as fraudulent, and therefore inoperative. *Masters* vs. *Child,* 3 Salk. 66.

It is to be observed, that this principle applies only when the fraudulent removal is procured by the officers of the town or parish, to whom the duty of taking charge of the poor is committed : when done by others, it has no effect. It has been contended, that this applies only to the case where the mother is settled in the parish from which she is removed, and probably most of the cases in the reports are of this description. But it will be remembered that as to the settlement of an illegitimate child, the settlement of the mother in England is of no importance whatever. Thus if a mother resides in a parish, under a certificate, in which case she gains no settlement in the parish where she resides, and is there delivered of an illegitimate child. The child is settled where born, and where the mother resided at the time, though residing under a certificate, and though settled in another town. But further, the case read from 4 Barn. & Adolph. 211, *King* vs. *Maltersley,* does not recognize any distinction in the case of a fraudulent removal, whether the mother was settled in the parish from which removed or not ; but lays down the principle generally, that where the mother is fraudulently removed by parish officers, the child is settled in

WINDSOR,
*February*,
1835.

Plymouth
*vs.*
Windsor.

the parish from which the mother was so removed.   And indeed it must be so from reason, as well as from authority.   A residence thus attempted to be changed, for such a purpose, cannot be considered as legally changed.   A woman thus removed, must be considered as still residing in the town or parish where she had resided, and where, but from the procurement, she would have continued to reside.   The law does not, and cannot permit a settlement to be thus changed, or to be acquired in a parish or town, other than what it would have been, but for the improper practice of its officers.   It will be remembered, that it is only where the officers of the town practice this fraud, that these consequences are visited on the town.   There are other cases in which the place of birth of an illegitimate child, for the purpose of settlement, is not considered as the particular town or place where the mother is delivered.— Children of this description, born while the parent is in jail, or in a work-house, or after an order of removal, are considered as born in the place where the mother resides, or has her settlement, or to which she was about to be removed and have her residence.   The jail or work-house is considered, for this purpose, as situated in every town in the county.

The case of *Tewksbury* vs. *Twining*, 2 Bott's Poor Laws, 1, 2, is a very clear and decisive authority on this subject, that an illegitimate child must be provided for by the parish which used the practice to have the child born in another parish.   The result is, that this pauper must be considered as born in Windsor, where her mother had resided for a great number of years, and until a short period antecedent to the birth of this pauper, and where, as the jury must have found, under the charge of the court, she would have continued to reside, if the overseers of the poor of Windsor had not caused her to be removed to Bridgewater.   And from the conceded principle that the place of birth of an illegitimate child was at this time the place of its settlement, the pauper had her settlement in Windsor, and was duly removed.

Judgment affirmed,