## HIGH COURT OF ERRORS AND APPEALS

### FOR THE

## STATE OF MISSISSIPPI.

| 26 | 627 |
|f 85 | 187 |

## APRIL TERM, 1854.

### WILLIAM B. HOOVER v. C. and L. PIERCE.

Where A. sued B. upon a promissory note, the consideration of which was certain negroes sold to B. as merchandise, contrary to the constitution of the State, and a count was included in the same declaration for the hire of certain negroes, and also one for money had and received to the use of A., arising from the sale of the same negroes, they having been sold by B. at an enhanced price:—*Held*, that the note given for the slaves, being in contravention of the 7th art. 2d sect. of the constitution of the State, it is voidable; and as a general rule, a party cannot recover money which has been paid upon an illegal consideration.

Where two parties agree in violating the laws, a court will not entertain the claim of either party against the other for the fruits of such an illegal bargain.

In such a case, no distinction, founded on principle, exists between money, chattels, or land paid upon an illegal consideration, and courts will not lend

their aid to a party who has parted with his property on an illegal considera-
tion, to regain possession of it. *Held*, that A. not being entitled to invoke
the aid of a court to recover back the slaves, he cannot maintain an action to
recover the proceeds of the sale.

Courts of original jurisdiction, in the trial of causes before them, are clothed
with discretionary authority which it is difficult to define and limit to any
general rule; but as a general rule, after the evidence in a case has been
closed, additional testimony should not be introduced by either party;
but it rests with the courts, in the exercise of a sound discretion, to determine
whether a particular case does not warrant a departure from this rule.

THE opinion of the court contains a full and clear statement
of the facts of the case.*

Mr. Chief-Justice SMITH delivered the opinion of the court.

This was an action of assumpsit upon a promissory note.
In addition to the count on the note, the declaration contained
counts for the hire of certain slaves, and for money had and
received, to the use of the plaintiff, arising from the sale of the
same slaves. A verdict and judgment were rendered for the
defendants, and the case is brought before us on the bill of ex-
ceptions taken to various decisions of the circuit judge during
the progress of the trial. There was no motion made for a
new trial in the circuit court; we are hence relieved from the
duty of passing upon the question raised in the argument
at bar, whether or not the verdict was sustained by the evi-
dence.

After the evidence was closed, and the cause was put before
the jury, the defendants were permitted to introduce a witness,
who was examined as to facts supposed to be material to the
defence. The plaintiff excepted, and this action of the court
is now urged as a ground for reversing the judgment.

Courts of original jurisdiction, in the conducting of trials

---

* No counsel is marked to this and the seven cases that follow, because they
had to be reported without the record, the opinions having to be sent by mail
to me to complete this volume; and the same cause will account for the want
of a full statement of the cases. — *Reporter.*

Hoover *v.* Pierce.

before them, from necessity, are clothed with a discretionary authority which it is difficult to define and limit by any general rule. After the evidence in a cause has been closed, additional witnesses should not be introduced by either party. This is the general rule which these courts have found it expedient to adopt. But it rests with them, in the exercise of a sound discretion, to determine whether the facts and circumstances of a particular case do not warrant a departure from it. Hence an appellate court will not interfere with the exercise of this discretion, unless in an extreme case, where the injustice caused by a departure from this rule is manifest and great. Doubtless, in the case before us, the court, in permitting the introduction of the witness, deemed it necessary for the furtherance of justice; and it does not appear to us that great or manifest injustice was done to the plaintiff.

The defence was based on the alleged illegality in the consideration of the note declared on. It was shown by the evidence that the note was given for the sum remaining due on a protested bill of exchange, which was drawn in payment of slaves brought into this State as merchandise, and sold by the plaintiff to the defendants. A question was raised, whether by the evidence it was sufficiently proved that the slaves were introduced since the first of May, 1833. But if that fact was proved, it was conceded that no recovery could be had upon the note.

It was in proof that, some time after the slaves were sold by the plaintiff to the defendants, the latter sold them for a sum greater than the price which they had agreed to pay for them. And it is now contended, that, admitting the contract of sale to be illegal and void, and the consequent invalidity of the note, the plaintiff is entitled to recover, under the common counts, the proceeds of the sale of the slaves made by the defendants, and hire for the time which they had them in possession.

In support of this position, it said, that as the contract of sale was absolutely void, it neither divested the title of the plaintiff, nor conferred any title or interest upon the defendants,

53 *

either to the slaves themselves, or the proceeds of their labor; hence that the parties stood as if there had been no attempt to sell or purchase. That the sale made by the defendants was a wrongful act, — was a trespass upon the plaintiff, which he might waive, affirm the sale, and recover the proceeds, upon the implied equitable assumpsit of the defendants.

It is very manifest, that if, in the sale made by the defendants, they acted, or could be considered to act, as the agents of the plaintiff, or if there was any privity between the parties, a recovery could not be had. It would be violative of a principle of universal application, which declares no one shall be permitted to reap the fruits of an illegal transaction. But this view of the subject is repudiated. The position is attempted to be sustained solely on the assumption, that the sale was an act of trespass upon the rights of the plaintiff, who, by means of the attempted sale, which was absolutely void, was in no wise divested of his title to the slaves.

Where one has, by an act of trespass, possessed himself of the personal chattels of another, and has sold them, and received the proceeds of the sale, the injured party may waive his remedy on the tort, affirm the sale, and recover the proceeds of the sale in an action of assumpsit. But we apprehend that no case can be put, where a party thus circumstanced, could maintain an action for the proceeds, even against the trespasser, unless he could also maintain detinue against him for the chattels themselves. Let us test the right of the plaintiff to recover the proceeds of the sale by the application of this rule. It is obvious that our remarks will apply with equal pertinency to the count for the hire of the slaves.

Could the plaintiff have maintained detinue against the defendants for the slaves, upon the alleged ground that the contract of sale was void?

It has been definitively settled by this court that all obligations and contracts made to secure the price of slaves brought into this State and sold in violation of the second section of the seventh article of the constitution, in regard to slaves, may be avoided upon the plea of the defendant. But whilst

Hoover *v.* Pierce.

this doctrine is held by the court, it will not lend its aid to a party who seeks to recover back money which has been, in fact, paid upon an illegal consideration, upon the maxim, that *in pari delicto potior est conditio defendentis.* The only exception to this rule recognized by the English decisions exists in that class of cases in which one of the parties has, by an illegal act, taken advantage of and oppressed the other. The exception, and the reason upon which it is founded, is clearly stated by Lord Mansfield, in *Browning* v. *Morris,* Cow. R. 790. His lordship said, that where certain acts are made unlawful by statute, in order to protect unwary and ignorant people from oppression and extortion, then, although both parties are guilty of violating the law, yet they are not equally guilty; and that in such cases, the party from whom the money has been exacted, shall recover it back from the party who practised the oppression. The cases put in illustration of the rule are, where, under an usurious contract, a party has received a greater amount of interest than is allowed by the statute, and where a bankrupt has paid money to his creditor as the consideration for signing his certificate. In these cases the parties from whom the money is exacted are entitled to recover it back. And although they have been guilty of a violation of the law, they are not regarded as equally guilty with the party who, taking advantage of their necessitous condition, has extorted money from them. But it is now unquestionably settled in England and in this country, that where a party has paid money upon an illegal contract, he cannot maintain an action to recover it back where he is really *in pari delicto.* We are not apprised of any decision in this court where the distinction taken in the courts of England has been recognized. The case before us does not require an adjudication upon the point, and we will not decide it in advance.

The defendants who purchased the slaves illegally brought into the State, and the plaintiffs who introduced them, are equally guilty of violating the law. Hence, upon the principle above laid down, it is very evident that the former could not maintain an action for money had and received against the

plaintiffs, to recover back the money paid on their contract for the purchase of the slaves. It was money paid on an illegal contract. The same doctrine which would require us to refuse our assistance to the plaintiff, to recover the unpaid purchase-money, would forbid our giving aid to the defendant if he sought to recover back that part of it which has been paid. The same principle would apply if other slaves had been transferred, or land had been conveyed in payment. The parties would not have a right to enter upon the land and avoid the conveyance, or to annul the contract and recover back the slaves, upon the ground of the illegality of the consideration for the transfer or the conveyance. If the defendants could not recover in the cases we have put by way of illustration, it follows necessarily that the plaintiff could not maintain an action to recover back the slaves, which were sold and conveyed in violation of the law. The decision in the case of *The Inhabitants of Worcester* v. *Eaton*, 11 Mass. R. 368, is directly in point. The very lucid and able exposition of the law, applicable to the case under consideration, contained in the opinion of Chief-Justice Parker, entitles it to the highest consideration. In that case, the tenant defended under a conveyance from Fisk and Hudson, who had received a conveyance from the grantor of the demandants. The deed to Fisk and Hudson was executed and delivered prior to that of the demandants. The conveyance to Fisk and Hudson was founded on an immoral and illegal consideration. The question was, whether a deed given upon such a consideration, was absolutely void, or whether it could be avoided by the entry of the grantor, so that a subsequent conveyance made by her, *bonâ fide* and for a valuable consideration, would pass the estate.

In delivering the opinion of the court, the Chief-Justice said: " It appears to be the settled law in England, and we are satisfied that it is also the law here, that where two parties agree in violating the laws of the land, the court will not entertain the claim of either party against the other for the fruits of such an unlawful bargain. If one hold the promise or obligation of the

other, to pay him money, or to do any other valuable act on account of such illegal transaction, the party defendant may expose the nature óf the transaction to the court, and the law will say, ' Our forms and rules are established to protect the innocent and to vindicate the injured, not to aid offenders in the execution of their unjust projects;' and if the party who has foolishly paid his money, repents his folly, and brings an action to recover it back, the same law will say to him: ' You have paid the price of your wickedness, and you must not have the aid of the law, to rid you of ah inconvenience which is a suitable punishment of your offence.'

" If, then, the composition of a felony or a larceny is an illegal consideration of any promise or obligation to pay money, the party claiming under such instrument cannot enforce it in a court of justice; nor can the other party, if he has paid it, recover it back again. There must, then, be a distinction between land and money paid on such a consideration, or Betsey Flagg could not on this ground avoid her deed to Fisk & Hudson by entry or action, so as to convey a title to the demandant. Such a distinction was attempted in argument, but we find no foundation for it. A deed of bargain and sale, signed, sealed, delivered, acknowledged, and recorded, is an actual transfer of the land to the grantee, as much as the delivery over of a sum of money or of a personal chattel, is a transfer of either of those."

We concur with the court in that case, that no distinction, founded on principle, exists between money and chattels, or land, paid upon an illegal consideration. And whether contracts for the transfer of personal property, or the conveyance of land be absolutely void or not, courts will not lend their aid to a party who has parted with his property on an illegal consideration to regain possession of it. If, then, the plaintiff was not entitled to invoke the aid of a court to recover back the slaves, it is clear that he could maintain no action to recover the proceeds of the sale. It would, in effect, be permitting the party to recover upon an implied contract, where he could not have prevailed if the contract had been express.

Let the judgment be affirmed.