Colgrove *v.* Tallman.

---

GEORGE COLGROVE, Respondent, *v.* CHARLES TALLMAN, Appellant, impleaded with HENRY C. BARNES.

(GENERAL TERM, FIFTH DISTRICT, DECEMBER, 1869.)

In June, 1864, T. sold out his interest in the firm of B. & T. to B., who assumed payment of the firm debts; C., the holder of a firm note, was duly notified of the dissolution and assumption, and was requested by T. to collect the note at once; payments on the note were made by B., and when, in June, 1865, C. formally demanded payment in full, for the purpose as he said, of investing in United States bonds, B., who held bonds more than sufficient to balance the note, offered to give C. instead of money, a receipt for an equal amount of bonds; the balance due on the note and its equivalent in bonds, were adjusted between them, and B. gave C. a receipt, stating that he had received from C. the bonds, to be held by him for safe keeping, and to be returned to C. on surrender of receipt, which was duly stamped and delivered; the note was not, in fact, surrendered by C., and the bonds remained in possession of B. who

Colgrove *v.* Tallman.

.made a further payment on the note, and in July, 1866, made a general assignment for the benefit of creditors; C. then demanded possession of the bonds, but did not get them, and subsequently, for the first time, demanded payment of the note from T., and on refusal sued B. & T. on ·the note; B. had told T. that the note was paid, but on the trial before a referee there was a conflict as to whether C. had promised to surrender the note and hold the receipt in its stead. On appeal by T. from a judgment for the plaintiff.—*Held*, reversing the referee's finding of fact, that ·the receipt for the stock was taken in payment of the note, and the judgment against the appellant could not be sustained.·

After notice has been given to a firm creditor by each of the partners, that one of them has withdrawn, and that the other will continue the business, and has agreed to pay individually the firm debts, transactions between the creditor and continuing partner must be considered with a reference to the new relations of principal and surety existing between the late partners, in determining the question whether any such transaction amounts in favor of the retired partner to a payment of the firm debt.

APPEAL from a judgment in favor of the plaintiff, on the report of a referee.

Previous to, and on the 3d day of October, 1863, the defendants were copartners and doing business as liquor merchants in Syracuse, under the firm name of H. C. Barnes & Co., and on that day as such copartners, executed to the plaintiff, in their firm name, their promissory note for $2,000 payable to him or his order at their office, "fifteen days demand after date."

Afterward and about the 21st day' of June, 1864, the defendant, Tallman, sold out his interest in the copartnership to the defendant, Barnes. The copartnership was dissolved, and Barnes assumed and agreed to pay the firm debts and liabilities. Barnes continued the business until July, 1866, when he failed, and made a general assignment for the benefit of his creditors, with preferences to some of them.

·Soon after the dissolution of the copartnership in 1864, the plaintiff was notified thereof, and that Barnes had assumed and was to pay this debt, and he was requested by Tallman to collect the note at once; and after that Barnes, on the 17th day of April, 1865, paid the plaintiff the sum of $214.30, and on the 26th of June, 1865, the sum of $400, to

Colgrove v. Tallman.

be applied toward the payment of the note, and they were, indorsed thereon by the plaintiff.

On, or immediately after the 25th of June, 1865, Colgrove demanded payment of the note from Barnes, for the purpose, as he stated, of investing the proceeds in government bonds, in order to exempt that amount of his personal estate from taxation. Barnes then held and owned a larger amount than that of government bonds. They estimated the amount due on the note, and Barnes proposed to give Colgrove a receipt for $1,600 of government bonds which were then worth as much as the balance due on the note, instead of paying him the money; to which Colgrove assented. And Barnes then executed to Colgrove a receipt, dated back, and which was as follows:

"Syracuse, *May 30th*, 1865.

"Received of George Colgrove, sixteen hundred dollars of U. S. 7-30 notes, which are held by me for safe keeping, and to be returned to him at any time on surrender of this receipt (stamp two cents).

"(Signed)     HENRY CLAY BARNES."

But the note was not then surrendered to Barnes. At that time Barnes was good and responsible, and subsequent thereto, no demand for payment of the note was made by Colgrove upon Tallman, until after the failure of Barnes, which occurred in the month of July, 1866. And after, or about the time that Barnes failed, a demand was made on behalf of Colgrove upon Barnes for the 7-30 notes, which was not complied with and after that Colgrove demanded of Barnes, the payment of the note in question.

Barnes and Colgrove both testified to this transaction, and the only material conflict between them was, that Barnes testified, that at the time the receipt was given, Colgrove agreed to send him the note, which statement Colgrove denied. Soon after the execution to Colgrove of the receipt for the 7-30 notes, Barnes informed Tallman that he had paid the note, and no claim was made upon him for it, until sometime after Barnes failed. The demand made by the plaintiff

on Barnes on or about the 25th day of June, 1865, was such as to mature the note in fifteen days thereafter, unless it was sooner paid.

On the 24th day of March, 1866, Barnes paid the plaintiff $421.19, which was indorsed on the note, and after the general assignment of Barnes, which was made in July, 1866, his assignees paid the plaintiff $325 on the 30th day of July, 1866; and $130 on the 22d of August, 1866, which were indorsed by the plaintiff on the note.

The referee found that the receipt for the United States notes was not taken in payment of the note in question; that as between the plaintiff and Tallman, the latter was not at any time a surety for Barnes in regard to this debt; and, he also found as a matter of fact, that the letter of Tallman to Colgrove, notifying him that Barnes was to pay the debt, and requesting him to collect it at once, was not received by Colgrove until after Barnes failed. And he found and reported in favor of the plaintiff against both defendants, for the sum of $1,060.87, upon which judgment was entered, and which was for $30.47 more than the plaintiff was in any event entitled to recover.

The defendant, Tallman, appealed to this court.

*D. Pratt*, for the appellant.

*Charles Stevens*, for the respondent.

Present—BACON, FOSTER and MULLIN, JJ.

By the Court—FOSTER, J.   There is no question, but that the report and judgment were erroneous in amount, and that they include $30.47 to which the plaintiff was not entitled; but the judgment should not be reversed and a new trial granted for that reason alone, if the plaintiff stipulates to deduct that amount from the judgment.

There is quite as little doubt upon the evidence, that the finding of fact, that the letter of Tallman to Colgrove informing him that Barnes was to pay the note and requesting him

Colgrove *v.* Tallman.

to collect it at once, was received by Colgrove after the failure of Barnes was erroneous. There is no evidence to support the finding. Tallman testifies that the letter was sent in 1864, and even when examined in chief, Colgrove testified: "My impressions are very indistinct of that letter, but I should say that I received it *before* Barnes' failure, if at all." And, on his cross-examination, he said: "I have an indistinct impression I received a letter from Tallman; I cannot say I did or did not; I cannot pretend to state contents, having an indistinct impression; I have made search for it; I have no definite recollection as to the time when I received it."

It was also received by him before the time when Barnes executed the receipts for the 7-30s, and doubtless in the year 1864, for such is the testimony of Tallman, and while Colgrove thinks he received the letter, does not contradict Tallman, either as to the time he received it, or as to its contents; stating in substance that he cannot speak as to either, because his recollection in regard to it is so indistinct.

From the times when Barnes informed Colgrove that he was to pay the note, and Tallman sent him the above mentioned letter, as between Colgrove and him, he was the surety of Barnes to the same extent, as he was so, as between himself and Barnes. And the rule is the same whether he became so after the making of the note from the time the plaintiff had notice of it, as it would have been if Tallman had originally been surety for Barnes, and that fact was made known to Colgrove.

This is not, however, of any importance so far as any extension of credit to Barnes is concerned. For the case does not show any agreement on the part of the plaintiff to give time to Barnes for payment of the note; but only upon the question, whether as to Tallman the transaction between Barnes and Colgrove was or was not a payment.

Colgrove went to Barnes after he knew from both of the defendants that Barnes alone was to pay the note. He demanded of him the payment for the purpose of investing the amount in government securities, so as to be exempt from

taxation to that amount. He does not claim that he took the receipt as collateral to the note, but he insists that he took it entirely independent of, and as having no connection with the note. Now, why did he so take it? If taken as he claims, it was without any consideration whatever; it was not legal evidence that he held any 7-30 notes in the hands of Barnes. He could not use it for the purpose of reducing his assessment. It was no better in his hands than waste paper, and any affidavit or oath of his founded thereon, for the purpose of getting rid of taxation would have been perjury on his part. And why did he not then insist upon the payment of the note in money, so that he could make the investment which he desired to make.

Upon his theory, all that took place between him and Barnes on that occasion, was not only a useless and idle ceremony, but too foolish for business men to be engaged in. But if it was what he claims it to be, why did he immediately, after Barnes' failure, call for the delivery of the 7-30 notes. He must have known that he had no claim on Barnes for such notes; that the receipt was entirely void for want of consideration; that the execution and delivery of it to him was only a farce, and yet he sends his lawyer to demand it upon the receipt as his own, and during all the intervening time, he had not in any way claimed that Tallman owed him anything. All this is too incredible to be believed, when opposed by the direct testimony of Barnes, that the title to the United States notes really passed from him to Colgrove, and that he thereafter held them for Colgrove, and to be delivered to him when he should produce the receipt; and when the story of Barnes is so supported by the subsequent acts of the plaintiff. He knew that Tallman was surety. He entered into a transaction with Barnes, by which the absolute title to the government notes passed to him, and passed to him in lieu of what he had then demanded—payment of the note in question; and Barnes immediately thereafter informed Tallman of what had been done, and that he had paid the note; and I think upon all the evidence in the case, he was

estopped from afterward claiming that the note in question was not paid. He well knew that the 7-30s were good, and Barnes being in good standing, he was willing to take from him the evidence · that they were transferred to him, and intrust .him with the possession of them; and he doubtless thought he could rely upon Barnes to have them forthcoming when. he should demand them. And he evidently did so. And whether such arrangement was afterward changed between him and Barnes is wholly immaterial to Tallman. It is enough for him that by the transaction, when the receipt .was given, the 7-30s were taken instead of the note.

It would lead to manifest injustice, if such a transaction as the one in question were not held to estop the plaintiff from claiming that the note was not paid. It is a question of evidence upon the fact, whether the note was paid or not, and I think the finding was in conflict with the evidence, which well established that the receipt for the stock was taken in payment and discharge of the note.

· A new trial should be granted, with costs to abide the event, and the order of reference should be discharged.

All concurring. New trial ordered and order of reference vacated.