M. F. GOURLEY v. TYLER & SIMPSON.

(No. 3005.)

APPEAL from Cooke County.    Opinion by DAVID-
SON, J.

(*Transferred from Austin.*)

DAVIS & HARRIS, counsel for appellant.

BAILEY & McCAUS, counsel for appellees.

§ **215.** *Partnership; retiring partner becomes a surety
for the firm, when; case stated.* This action was brought
by appellees, Tyler & Simpson, to recover of appellant,
M. F. Gourley, a balance of $348.86, with interest from
January 1, 1887, at eight per cent., claimed to be due for
goods sold by them to the firm of Miliken & Gourley, a
partnership composed of B. F. Miliken and appellant
Gourley, between January 1, 1886, and December 12,
1886.    The plaintiffs alleged in their petition: *First.*
That in January, 1887, appellant retired from the firm of
Miliken & Gourley, leaving the firm business in the
hands of Miliken, and that in February, 1887, Miliken
made an assignment for the benefit of creditors; that
plaintiffs were requested by appellant to accept under
the assignment, and that he agreed to pay whatever the
sum realized out of the assignment should lack in pay-
ing off the entire debt of $719.28; that plaintiffs only
realized $370.42 out of the assignment, and that after this
sum was paid appellant admitted to plaintiffs that he
justly owed them the balance of their debt remaining
unpaid, to wit, $348.86, and then promised plaintiffs to
pay them that sum.    *Second.* The appellant answered
by a general denial, the two-years statute of limitations,
and, specially answering, set up that on December 17,
1886, the partnership theretofore existing between B. F.
Miliken and appellant, Gourley, was dissolved, Miliken
receiving all the assets of the partnership, and agreeing,

in consideration therefor, to pay all the debts of the partnership, and save appellant from any liability thereon; that this contract was well known to appellees; that thereafter, in February, 1887, said Miliken made an assignment under the statute, conveying all his property to J. M. Wright, for the benefit of such of his creditors only as would release him from their respective demands; that appellees accepted under said assignment in the manner prescribed by law, and filed with the assignee the account sued on, and afterwards received out of the proceeds of the assigned property the sum of $370.42, being fifty-one and one-half per cent. upon the full amount of the account, and thereby and thereupon the said Miliken and the appellant were both released from any further liability to appellees, and their account was fully paid off and discharged. Appellant further answered, denying that he requested appellees to accept under the assignment, or agreed to pay appellees any balance remaining on said account after appellees had received their *pro rata* under the assignment; but alleged that if any such promise was made, it was verbal and was unknown to the other accepting creditors of Miliken & Gourley, and not consented to by them, and not disclosed in appellees' affidavit to the nature and particulars of their account, which was allowed for the full amount; that appellees were the largest creditors, and resided in Gainsville; that it was known that other creditors would be influenced by their action in respect to the said assignment, and that appellees threatened to contest said assignment, and refused to accept thereunder, unless defendant would enter into said agreement, and that if appellant made the agreement it was upon the aforesaid state of facts, and in order to prevent plaintiffs from contesting said assignment, and to induce others, by the influence of their example, to accept thereunder; that said agreement was secret and underhand, and was exacted by appellees as aforesaid, in order to obtain an ad-

vantage over other creditors, and that the agreement was without consideration, was a fraud on the other creditors, and contrary to law and public policy, and void.   There was a trial before the judge, who rendered judgment against appellant for the full amount claimed by appellees, to wit, $348.86, with interest at eight per cent. from January 1, 1887.   From this judgment this appeal is prosecuted.

The appellees agree that the above statement is substantially correct.   The first question presented by the above statement is, what were the relations of the parties to each other at the time of the assignment of Miliken; and the next question presented is, what relation did they occupy to each other when the appellees went into and became consenting creditors under the assignment made by Miliken for the benefit of his consenting creditors, and accepted the conditions and benefits of said assignment, and what was the relation the parties to this suit sustained to each other on account and by reason of the agreement entered into between them that led and induced appellees to take the benefits of Miliken's assignment, and what was the effect of these different relations of the parties to each other?  At the time that Miliken assigned his property for the benefit of his consenting creditors the appellee had ceased to be a partner in the firm of Miliken & Gourley, he having previously sold out his interest in the firm to Miliken, who received all the assets of the partnership, and agreed to pay all the liabilities of said partnership.   Appellees were fully aware of this agreement between Miliken & Gourley. The rule is that " when one member of a partnership retires from a firm, and the remaining members agree with him to pay the firm debts, and these facts are known to the creditor, the member so retiring will be considered in law a surety."   [Brandt. Sur., § 23; Thurber v. Cobin, 51 Barb. 215; Colgrove v. Tallman, 2 Lans. 97.]   Again, it is said:   " Where one of two copartners purchases the

interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, the purchaser, as to such debts, becomes, in equity, the principal debtor, and the vendor the surety; and firm creditors, dealing with the purchaser with notice of the transfer, are bound to observe the relationship at their peril." [Baylies, Sur., pp. 481, 482, and also p. 40; Colgrove v. Tallman, 67 N. Y. 95; Oakeley v. Pasheller, 10 Bligh (N. S.), 548, 590; Millerd v. Thorn, 56 N. Y. 402; Savage v. Putnam, 32 N. Y. 501; Morss v. Gleason, 64 N. Y. 204; Kinney v. McCullough, 1 Sandf. Ch. 370.]

At the time that appellant sold his interest in the partnership to his copartner, Miliken, the appellees were creditors of the firm of Miliken & Gourley, and knew of the terms of said sale to Miliken by Gourley, and were affected with notice thereof thenceforward. Then, as to them, appellant became surety for the firm debts, and he was entitled to all the rights of a surety. [Brandt, Sur., § 19; Bank v. Matson, 26 Mo. 243; Colgrove v. Tallman, 2 Lans. 97; Pooley v. Harradine, 7 El. & Bl. 431.] "It is the fact of knowledge on the part of the creditors, coupled with certain equitable principles, and not any contract between him and the surety, which raises the equity on behalf of the surety, and it necessarily follows that the equity exists from the time the creditor has the knowledge." [Brandt, Sur., § 19.] It is a general proposition that, when the principal is released from his obligation, the surety is also released. [Id., §§ 121, 122, and notes thereto; Baylies, Sur., p. 274.] If appellee, by reason of his former relation to the partnership of Miliken & Gourley, still continued the relation of a principal debtor to the creditors of that firm after his dissolution and his retirement therefrom, then what effect would Miliken's discharge under the assignment have upon Gourley's relations to the accepting creditors under said assignment? As a general rule, it is true that the release of one member of joint debtors discharges the others.

The authorities are abundant on this proposition. [Bank v. Bates, 76 Tex. 329; McIlhenny v. Blum, 68 Tex. 197; Bridges v. Phillips, 17 Tex. 128; 1 Pars. Cont. 28; Elliot v. Holbrook, 33 Ala. 667; Vandever v. Clark, 16 Ark. 335; Tuckerman v. Newhall, 17 Mass. 584; Bonney v. Bonney, 29 Iowa, 448; Brown v. Marsh, 7 Vt. 327; Parmelee v. Lawrence, 44 Ill. 405.]

§ 216. *Fraudulent assignment for the benefit of creditors; instance of.* Appellant had a verbal agreement with appellees by which he agreed, if they would accept under the assignment of Miliken, he would pay them any deficiency that might accrue in their favor when their claim was paid off by the assignee. They had declined, until this agreement was entered into, to accept under said assignment. But upon the making of this agreement they did accept under said assignment as consenting creditors. In filing their claim with assignee, appellees "made no reservation" against Gourley. There were about twenty creditors of the Miliken & Gourley firm. None of these were informed of the contract between appellee and Gourley, and none of them knew of it. No written statement of appellees filed with the assignee disclosed any reservation as against Gourley. Appellees were the largest creditors, and Gourley testified that he was anxious for them to accept, fearing that if they refused all the foreign creditors would also refuse, and if appellees would accept, then all the foreign creditors would also accept, and so they did in the end. He agreed with appellees that, if they would accept, he would pay them the deficiency upon their claim, when it was ascertained what it was and when he was able to pay it or had the money to spare. This agreement to pay appellees was secretly made, and without the knowledge and consent of other creditors, and appellant insists that it was illegal and void, and that no action can be maintained thereon. Under his first assignment of error the following proposition is relied on: "Where a debtor

makes an assignment for the benefit of all creditors, according to their respective demands, who will discharge him from further liability, an agreement by the debtor, or any one in his behalf, or by a stranger, to pay one of the creditors an additional sum in order to induce his acceptance, is fraudulent and void, and contrary to public policy, if entered into without the knowledge or consent of the other creditors." The proposition is a clear enunciation of the law applicable to the case put therein. [Willis v. Morris, 63 Tex. 458; 7 Wait, Act. & Def. 69, and cases cited.] "An undertaking between a debtor and one of his creditors, in effecting a composition of his debts, by which he agrees to a secret preference of such creditor, renders the whole composition invalid, and the debtor himself can plead such agreement in an action upon the contract of composition." [Bigelow, Frauds, pp. 342, 343, and authorities there cited. See, also, Story, Eq. Jur., §§ 378, 379; Kerr, Fraud & M. 214; Add. Cont., § 264.]

If it be conceded that Gourley, as a principal debtor, made the agreement with appellees by which they were induced to accept under Miliken's assignment, then it is clear that the said compensation was illegal, and cannot be enforced, for the law will leave the parties where it finds them. "Nothing is better settled than that, in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them while they remain executory, either in whole or in part, nor, when executed, will it aid either party to place himself *in statu quo* by a rescission, but will, in both cases, leave the parties where it finds them." [Nellis v. Clark, 20 Wend. 24; Goudy v. Gebhart, 1 Ohio St. 266; Knowlton v. Spring Co., 57 N. Y. 528; Hoover v. Pierce, 26 Miss. 627; McWilliams v. Phillips, 51 Miss. 196; Hooker v. De Palos, 28 Ohio St. 251.] If the parties be *in pari delicto*, they will be left remediless, their contract will not be set aside, and any money which

may have been advanced cannot be recovered back."
[7 Wait, Act. & Def. 69; Howson v. Hancock, 8 Term
R. 575; McLoskey v. Gordon, 26 Miss. 260; Broughton
v. Broughton, 4 Rich. Law, 491; Thomas v. Richmond,
12 Wall. 349; Setter v. Alvey, 15 Kan. 157.]

The appellees' only counter-proposition contained in
their brief is stated thus: "Where A. holds a claim
against two partners, B. & C., and B. sells out his inter-
est in the partnership to C., and C. assumes the liabili-
ties of the firm, and after his purchase from B., and
before A.'s debt has been paid, C. makes a general as-
signment under the statute for the benefit of creditors,
it is lawful for A., at the request of B., and upon his
promise to make good the deficiency, to accept under
such assignment, and such promise on the part of B. is
valid and binding." This proposition may or may not
be true. That would depend upon the circumstances at-
tendant upon the agreement. If the agreement was a
composition with one of the creditors in fraud of the re-
maining creditors, the promise could not be enforced, as
we have already seen. That proposition does not meet
the issue of fraud and illegality charged upon the appel-
lees. In support of their proposition, we are cited to
Tooker v. Bennett, 3 Caines, 4. That case is not in point.
Bennett and Brewer were partners. Pending the part-
nership, Bennett assigned and secured his discharge.
Brewer did not assign, nor did he turn over any of his
property, separate or joint, to his creditors, but relied on
the discharge of Bennett to shield and protect him from
his creditors. In that case the partnership was pending,
and Brewer retained all of his property, not only sepa-
rate, but partnership. In the case before us Miliken and
Gourley had ceased to be partners, Gourley had turned
over and assigned his property to Miliken for the benefit
of creditors with full knowledge on part of appellees,
and appellees pursued this property for the payment of
their debt into the hands of Miliken's assignee, and act-

ually obtained fifty-one and one-half per cent. of their claim out of same. Appellees proceed upon three theories: (1) That Miliken and Gourley were partners at the date of Miliken's assignment; and (2) that by the new contract with Gourley he became a new principal debtor to them, and the entire old debt was canceled as to him, and a new debt created; (3) by said new contract with Gourley, and a verbal reservation of their rights against Gourley, made to Wright at same period, prior to their filing their claim and statement with said assignee, they could hold Gourley liable on the old debt. If the agreement of Gourley to pay appellees the deficiency on their debt left over after deducting the payment of the assignee is a good contract, and valid in law, then this case should be affirmed; otherwise it should be reversed.

After a careful research we have been unable to find the exact question involved in this case decided, or to find a case in point. The point is this: If Gourley, as a surety of Miliken, made a composition with appellees by which they were to secure all their debt against Miliken's assignee, to the exclusion of the other creditors of Miliken, was it not fraudulent, illegal and wrong, and was it not intended to work a fraud upon the other creditors? It must be borne in mind that Gourley was surety alike for all the creditors of Miliken on debts growing out of the firm transactions of Miliken & Gourley. If Gourley was a joint or a principal debtor with Miliken, and had transferred all of his firm property to Miliken for benefit of creditors of said Miliken & Gourley, and afterwards made a composition with appellees by which they were preferred to other creditors, or by such composition were to gain some advantage not enjoyed by the remaining creditors, then it is evident that the composition or agreement would be illegal and non-enforceable. [Authorities heretofore cited.] In the case put above, Gourley would occupy the position of principal debtor. But suppose the relation is changed so that he becomes surety for all of

said debts, and the composition is made on the same terms, why should it be any more binding and legal than in the former case? In the one case he is principal to all the creditors; in the other he is surety to all. With no intervening equities he is equally bound in both cases. The fraud would be as decided and strong in the one case as in the other. The obligation resting upon him as a surety to protect the creditors is as strong towards one creditor as towards the other,—as to all creditors to whom his responsibility as surety exists. In either relation he is equally bound in that relation to each and all creditors alike, and cannot select one and prefer him to the exclusion of the others, unless the others have fair notice thereof. It is evident that the agreement entered into between appellees and appellant induced appellees to put in their claim as consenting creditors under the Miliken assignment. It is almost as evident that the action of appellees in filing their claim and taking advantage of said assignment contributed very largely in influencing the other creditors to file their claims. It is evident the compact between appellant and appellees was secret and unknown to the remaining creditors. Appellant was bound as surety for all the firm debts. When the creditors filed their receipts as accepting creditors he was released from all said debts. Had the creditors remained out of the assignment appellant could have been legally held liable for all of said debts, now he is discharged. Appellees and appellant became parties to the composition intending a fraud upon the other creditors, each one intending and expecting to reap his own harvest. Appellant succeeded, and the appellees have sought to make appellant pay their share of the spoils. The contract was fraudulent, illegal and cannot be enforced. It was a composition in derogation of the rights of the remaining creditors, conceived in covetousness and brought forth in fraud. The appellees sought to secure their debt at the expense of their fellow credit-

ors, and the appellant has succeeded in avoiding his responsibilities. They are equally guilty of the fraud, and the law leaves them where it finds them, and without a remedy. The court erred in rendering judgment for appellees. The case having been tried by the court without the intervention of a jury, and the opinion having disposed of all the questions in the case, the judgment is not only reversed, but it is here rendered that the appellees, the plaintiffs in the court below, take nothing by their suit, and appellant go hence without day, and that he recover of appellees all costs in this suit for which he may have execution.

February 14, 1891.          Reversed and rendered.