JAMES SAVAGE *et al.*, Appellants, *v.* ROCKWELL PUTNAM *et al.*, Respondents.

Members of a copartnership association who have assigned their interest therein to other solvent parties, with the assent of their copartners who accept such assignees as copartners in their stead, and recognize and treat them as such, as between themselves, are not liable for the debts of the copartnership existing at the time of such assignment; and they cannot be required to contribute for their payment to those continuing partners who have been required to pay the same.

At most, such partners who have thus assigned their interest in, and have ceased to be members of, such association, stand in the relation of sureties for the continuing members, to their partnership creditors, to be liable on condition as such sureties. And when the continuing partners pay such debt, they pay the same as principals, and their sureties are thereby discharged.

An express provision in their articles of association or copartnership that each partner should pay his share of the indebtedness of the association in proportion to his amount of shares of stock does not alter, enlarge or modify the legal liability or relation of the members thereof to each other. It only declares, in terms, what the law implies.

DAVIES, J. This action was brought to settle and adjust the affairs of a copartnership, organized in January, 1847, for the manufacture of lumber under the name of "The Saratoga Steam Mill Lumbering Association," with a capital of $10,000, and to compel the defendants, Putnam and Verbeck, to contribute toward the payment of certain debts of the concern, for which it is claimed they were liable to the plaintiffs. These defendants had ceased to be members of the copartnership, and had transferred all their interest in its property, funds and effects, with the consent of the plaintiffs and their associates, and their substitutes had been accepted in their place. The debts for which they are now called upon to contribute had been contracted at the time of such transfer. The referee before whom the action was tried found the following facts: That on the 19th day of January, 1847, George W. Wilcox, Enoch H. Rosekrans, two of the plaintiffs (the other plaintiff being Wm. L. F. Warren), together with Patrick H. Cowen, Henry H. Hathorn, Lyman Ainsworth, Andrew Hall, Washington Putnam, William H.

Andrews, Joseph Wescott and Nelson Hart, all of the town of Saratoga Springs, entered into articles of association, whereby they formed a company with a capital of $10,000, divided into shares of $100 each. The whole of said stock was taken by the individuals above named, except said Warren, and the association went into operation under said articles. By the terms of the articles, the directors had power to purchase, not exceeding 1,300 acres of land, to erect a steam saw mill, &c. The stock of the company was subsequently increased to $15,000, and the quantity of land to be purchased was also increased 1,000 acres. 2. That said ten persons proceeded to make purchases of real estate and other property, and issued certificates of stock, transferable on the books of the company, on giving three days' notice of the intention to make such transfer, and granting the first privilege of purchasing said stock to any member of the company, after which it was made the duty of the president to transfer the same. All the property purchased was so purchased for the use of the company and according to the articles, and was paid for by the funds of the company, and the title was held in trust for the purposes of the company, except the last 1,040 acres bought, the title to which was taken directly to the plaintiffs and George Young, Jr., the other defendant, the then owners of the whole of the stock of the said company, in March, 1854. 3. That on the 27th July, 1849, the association or company was composed of the plaintiffs in this action and the defendants Putnam and Verbeck. 4. That on the 27th of July, 1849, the said plaintiffs, and said defendants, Putnam and Verbeck, made and entered into the agreement set out in the complaint; which recited that said company then owned 2,042 acres of land, and that it was contemplated to borrow money to aid them in their business, and it was agreed that the interest of each stockholder in the said company might be appropriated in proportion to their respective interests therein to the payment of said loans and demands, and be held as security for any further indebtedness incurred in the prosecution of said business, and each did promise to pay his share of such indebtedness in proportion to the

amount of his shares of stock in said company. 5. That afterwards at various times between said 27th of July, 1849, and September, 1853, various loans of money were made for the purposes of said association and expended in its legitimate business, for which promissory notes were given, and which said notes were subscribed by the persons then carrying on said business, namely, the said plaintiffs, and the defendants Putnam and Verbeck. 6. That between the first of May, 1847, and the 26th of January, 1849, said defendant, Putnam, became the owner of, and had issued to him certificates for thirty-two shares of said stock; that he continued to hold the same until about the 16th of November, 1850, when he sold and transferred the same, with the assent of the proper officers of the association,—seven of said shares to the plaintiff Rosekrans, and the remaining twenty-five shares he held until the 6th of September, 1853, when he sold and transferred the same, with the assent of said association, to the defendant George Young, Jr., since which time said defendant Putnam has not been a member of said association, or had any connection with its business. That at the time of such transfer to said Enoch and George respectively, they were each solvent and were accepted by the said association in the place of said defendant, Putnam; and that by virtue of such purchase, the said Enoch and George respectively became liable to indemnify the said Putnam against all claims and demands which might be made against him, as a member of said corporation, in proportion to the number of shares received by each, and the said George expressly agreed so to indemnify him; and said association was, at the time of such transfer, solvent and able to pay and satisfy all its debts, and said transfer was made by said Putnam in good faith. That about the 1st of February, 1848, the defendant, Verbeck, became the owner of seven shares of the stock of said association and received certificates therefor under said articles, and continued to hold the same until the 25th day of October, 1853, when he sold the same to the plaintiff, Wilcox, and transferred the same to Wilcox, with the assent of the officers of such association; and in pursuance thereof,

the said Wilcox was accepted in lieu of said Verbeck as a member of said association, and agreed to indemnify said Verbeck against the debts of said association, since which time the said Verbeck has had no connection with the business of said association. That such transfer to said Wilcox was made in good faith, the said Wilcox then and still being solvent and abundantly able to fulfil the obligation assumed by him on such transfer. That the notes mentioned in the complaint were given for indebtedness created in the business of said association, and that the property pledged by the instrument of July 29, 1849, according to its original cost, was sufficient in value to pay said notes and all the indebtedness of said association. 7. That the defendant, Young, in the fall of 1853, was duly elected secretary of said association, and accepted said office and acted as such. That said defendant, Putnam, after the 6th of September, 1853, and while he stood only in the place of surety for the other parties, to wit, on the 5th of September, 1857, was compelled to pay and did pay the sum of $305.46, on a debt of the association contracted previous to the 5th of September, 1853. 8. That after the transfer of said stock by Verbeck to Wilcox, to wit, the 25th of October, 1855, the said association was composed of the plaintiffs in this action and the defendant Young, they owning the entire stock and property of the concern, and that they continued to conduct the business of the association until the 20th of June, 1855, on which day the property and stock of such association were owned by the said plaintiffs and said Young, in the following proportions, to wit: said Savage owned nine shares; said Wilcox owned eighteen shares; said Rosekrans owned fifty-one shares; said Warren owned thirty shares; and said Young owned thirty-three shares; and on said last mentioned day, the said plaintiffs and said Young, by a deed duly executed by themselves and their respective wives, acknowledged and declared their interest accordingly, and mutually conveyed to each other the real estate then belonging to the association, in undivided portions according to their respective shares of stock. And as conclusions of law, the referee found that, as between the par

ties to this action, the transfer of the stock of Verbeck to
Wilcox, with the assent of the association, and the acceptance
of Wilcox in lieu of Verbeck, discharged the latter from all
liability to the creditors of the association, and vested that
liability, together with all the interest of Verbeck in the
property of the association, in said Wilcox, who thereafter
became entitled to all the benefits and subject to all the bur
dens imposed on said Verbeck, and the latter continued
merely as surety for his late associates to the creditors of the
association. And that, as between the parties to this action,
the transfer by Putnam of seven shares of his stock to the
plaintiff Rosekrans, and twenty-five shares thereof, the re-
mainder of the stock on the 6th of September, 1853, to the
defendant, Young, with the assent in both cases of the asso-
ciation, and the acceptance of Rosekrans and Young, in lieu
of said Putnam, discharged the latter from all liability to the
creditors of the association, and vested that liability and all
the interest of said Putnam in the property of the associa-
tion, in said Rosekrans and Young, in proportion to the shares
then received by each, by virtue of said transfer, and said
Rosekrans and Young thereafter became entitled to all the
benefits and subject to all the burdens imposed upon said
Putnam, in proportion to the number of shares received by
each; and the said Putnam thereafter continued merely as a
surety for his late associates to the creditors of the associa-
tion. That the payment of the debts of the association, con-
tracted before said Verbeck and Putnam transferred their
stock as aforesaid, was an obligation assumed by the present
plaintiffs and Young, and if such payment was made by
either of said plaintiffs, it gave no right of contribution, either
against said Verbeck or Putnam, but entitles those who made
the payment, if any, to contribution against such of their
associates as have failed to make payment, in proportion to
the number of shares held by such defaulting party. That
the association formed by the articles in question was a con-
tinuing partnership, the members of which were changed at
every transfer of stock, and the whole property and effects
of the association became vested in the plaintiffs and Young,

after the assignment or transfer of Putnam, Verbeck and the other persons before named, and the liability to pay the debt of the concern was, at the time of the commencement of this action, also vested in the plaintiffs and Young, in proportion to their respective shares of stock. The referee thereupon adjudged that the complaint against the defendants, Verbeck and Putnam, be dismissed with costs, and that as a counterclaim had been proved and established in favor of the defendant, Putnam, against the said plaintiffs and the defendant, Young, he gave judgment against them therefor.

Judgment was accordingly entered upon said report, and the same on appeal was affirmed at the General Term of the Supreme Court, and the plaintiffs in this action now appeal to this court.

This action is between the members of this association or continuing partnership. Its primary object is to subject two outgoing members to the payment of their proportion of the debts of the association. That liability would be unquestioned as between them and the creditors of the association for all debts contracted before they ceased to be members thereof, and such liability might be continued for subsequent debts under certain circumstances. But no such questions arise upon the facts found in the present action. When the defendants, Verbeck and Putnam, transferred their stock and interest in the association, and their transferees were accepted by the remaining associates in their place, such transferees not only accepted and assumed all their liabilities as shareholders or copartners, but the associates thereby assumed so to regard them, and accepted them in lieu of the outgoing shareholders. This is the legal effect of the arrangements as between themselves, and such transfers having been found to have been made in good faith, and to solvent parties, no equity is presented why this legal consequence should be departed from. The then associates took the defendants' assignees as shareholders in their place and stead, and with them proceeded to carry on and manage the business of the association; and in 1855, they proceeded to divide up and convey to each other the real estate and other property of

the association.  The defendants, Verbeck and Putnam, are thus, by the other parties to this action, deprived of all interest in, or control over, the property of the association, and are now sought to be made liable for the payment of a portion of its debts.  The acts of the parties estop them from setting up such a claim.  It is found, as a fact, that the defendants, Verbeck and Putnam, ceased on the 25th of October, 1853, to have any interest in, or connection with, said association, or its property, funds or effects; and that thereafter, the whole of the property and effects of said association were owned by the plaintiffs and the defendant, Young.  The liability of Verbeck and Putnam thereafter for the debts of the association then contracted was secondary, and the referee has correctly found that they stood in relation to those debts only in the character of sureties, as between the parties then owning the partnership property and carrying on its business, who were primarily liable for the payment of its debts.  The plaintiffs, therefore, in paying such liabilities, have only discharged a duty which the law imposed upon them, and they have no claim, in consequence thereof, to call upon the defendants, Verbeck and Putnam, for reimbursement.  Neither does the agreement of July 27, 1849, at all alter or change the rights or duties of the respective parties to this action.

By it the parties thereto, in the first place, pledged the copartnership property for the payment of the copartnership debts.  This the law would have done in the absence of any such agreement.  And the promise therein contained, that each would pay his share of the indebtedness of the association, in proportion to the amount of his shares of stock therein, did not alter or increase the liability of such shareholder.  As between the shareholders, the law would have applied this rule, and have, as between the shareholders themselves, thus apportioned their liability.  After the property of the association had been exhausted, and applied to the payment of its debts, each shareholder would have been compelled to contribute to such payment, in proportion to the number of shares so held.  It is apparent, therefore, that this agreement contemplated and did not change the liability of

the parties, which the law, in its absence, would have imposed. The referee and the Supreme Court, therefore, properly held that it worked no change in the liabilities of the parties. It recognized distinctly that the parties were not to be liable for any indebtedness contracted after they should have sold out their stock and left the association. This agreement shows that all parties contemplated changes in the association, and that, as between themselves, such changes were made by a transfer of their respective shares of stock. The referee has found, as a fact, and that finding is conclusive in this court, that from and after the 25th of October, 1853, the other parties to this action, other than the defendants, Verbeck and Putnam, owned the whole stock, property, funds and effects of said association. As between them and these defendants, they had no claim to call on them, or either of them, for the payment of its debts. They had and owned its property, and they took it *cum onere*, and thus were bound to discharge its indebtedness. They also, as the principal debtors, were bound to pay all its debts, and the referee properly charged them with the amount which the defendant, Putnam, their surety, paid for them, and on their account, and for their benefit. His liability for such debts after his transfer of stock, and of all his interest in the copartnership property, and the acceptance, by the other associates, of his transferee in his place and stead, was that of a surety only. The money he was compelled to pay, and did pay, while holding that position for his principals, he was clearly entitled to recover from them, and in my opinion the judgment appealed from is, in all respects, correct, and should be affirmed, with costs.