MORSS, appellant, v. GLEASON.

*Partnership — dealings between partners — substitution of partner — liability of withdrawing partner.*

M. R. and G., who were copartners, made their firm note on demand and transferred it for value. Afterward G. retired from the firm and with the consent of M. and R., B. was substituted as partner in his place and assumed all his debts and liabilities, and the note was entered on the books of the new firm as an indebtedness. After this as payment of the purchase price of property sold, by M. to R., M. received the note from R. M. afterward transferred the note to his son who brought action thereupon. *Held,* that as between M. R. and G., G. was, after the substitution of B. as partner, liable upon the note only as surety ; that the receipt of the note for value by M. operated as a payment of the same, and the liability of the surety ceased, and that the subsequent transfer to M.'s son did not revive the note as against the firm or R.

APPEAL from a judgment in favor of defendant entered upon the report of a referee, and also appeal from an order granting an extra allowance of costs. The action was brought in Greene county by Foster Morss against Roman H. Gleason to recover the amount of a note, reading as follows :

"$9,814.17. For value received we promise to pay the executors and executrix of Colba Reed, deceased, or bearer, nine thousand eight hundred and fourteen dollars and seventeen cents, with interest. Gilboa, January 2, 1865.

"MORSS, REED & Co."

The firm of Morss, Reed & Co. consisted at that time of Burton G. Morss, Luman Reed and Roman H. Gleason, and the note was given for moneys borrowed by the firm of the estate of Colba Reed. The firm continued in business without change of members until October 25, 1867, when Gleason, with the consent of the other members, sold his interest in the personal property of the firm and in the real estate used in their business, to one John A. G. Barker. The incoming partner assumed all the liabilities of Barker, and Barker withdrew entirely from the firm. The firm continued business under the same firm name, and in a subsequent statement of debts and credits upon the books of such firm this note was treated as a debt due.

In March, 1867, Gleason agreed to purchase of Burton G. Morss an interest in real estate in Otsego and Delaware counties. In 1869, and after Barker had ceased to be a member of the firm, his interest having been sold by a receiver to Burton G. Morss, Morss agreed to take in payment of the property Gleason had agreed to purchase, the note mentioned which had come into the possession of Gleason's wife, and Gleason obtained and transferred the note to said Burton G. Morss, and it was accepted as agreed. After this Burton G. transferred the note to his son, Foster Morss, who commenced this action thereupon. Burton G. Morss and Luman Reed were named in the summons and complaint as defendants, but service was made upon Gleason alone.

*F. J. Fitch* and *Amasa J. Parker*, for appellant, cited upon the question of Gleason's liability, *Sage* v. *Chollar*, 21 Barb. 598 ; Story on Part., §§ 858, 859, 97, 326 ; *Ex parte Ruffin*, 6 Ves. 119 ; *Smith* v. *Lasher*, 5 Cow. 688 ; *Sherwood* v. *Barton*, 36 Barb. 284 ; Parsons on Part. 424, 437 (2d ed.) ; *Russell* v. *Austin*, 1 Paige, 192 ; *Champney* v. *Coope*, 32 N. Y. 543, 549 ; *Bascom* v. *Smith*, 34 id. 320 ; *Bralor* v. *Mayor*, 19 C. B. (N. S.) 76.

*A. M. Osborn*, for respondent.

BOCKES, J. The referee correctly held that the defendant had the affirmative under the pleadings. The answer contained no general denial, nor was there any specific denial of any material allegation of the complaint. The making, delivery and transfer of the note stood admitted in the pleadings. Those facts being

admitted, the denial of indebtedness or liability by the defendant was but a denial of a conclusion of law, and tendered no issue of fact for trial. *Edson* v. *Dillaye*, 8 How. 273; *Russell* v. *Clapp*, 7 Barb. 482. True, there was a denial that plaintiff was the real party in interest; this, however, amounted to nothing (*Bentley* v. *Jones*, 4 How. 202; *Russell* v. *Clapp*, 7 Barb. 482; *Seeley* v. *Engell*, 17 id. 530; *Hoxie* v. *Greene*, 37 How. 97), except as it was accompanied with the averment that the transfer to the plaintiff was fraudulent, and that B. G. Morss, one of the defendants, was the real party for whose benefit and under whose direction the action was prosecuted, which was matter of defense to be established by proof. The affirmative of this issue was with the defendant, as was the case with all the issues raised by the answer. The affirmative on the trial was properly given to the defendant.

The question presented on the appeal is on the merits. It is this: Whether the defendant, Roman H. Gleason, remained liable on the note in suit after its transfer to Burton G. Morss?

The note was made by the firm and in the firm name of "Morss, Reed & Co.," composed of Burton G. Morss, Luman Reed and Roman H. Gleason. While the note was outstanding in the hands of a third party, Gleason went out of the firm and John A. G. Barker took his place and assumed his liabilities as a member thereof, with the consent of the other parties. The change agreed upon and accepted by all was the introduction and substitution of Barker as a member of the firm in the place of Gleason, with all the rights and all the liabilities of the latter pertaining to the partnership business and affairs. The other partners, Morss and Reed, accepted Barker in the place of Gleason, and the business was thereafter conducted by Morss, Reed and Barker, the same as it had been previously and in the same firm name. Under this arrangement and substitution the note in suit was to be paid by the new firm. Morss and Reed were originally liable on it, and Barker had taken Gleason's place and assumed his obligation thereon. The new firm were now obligated to pay the note. Gleason's liability to the holder remained the same as before the change in the partnership; but as between him and the members of the new firm, the latter were primarily liable, and Gleason's obligation was that of surety. *Savage* v. *Putnam*, 32 N. Y. 501; *Thurber* v. *Corbin*, 51 Barb. 215; *Buel* v. *Cole*, 54 id. 351. He was surety for the payment of the debt for which the members of the new firm were jointly and

individually liable.   If compelled to pay the note or any part of it, he would have a right of action against them to be reimbursed the amount; the same in all respects as if the note had been made by the new firm as principal debtor and by himself as surety.   It was on this principle that Putnam was allowed to have return of the money paid by him in the case cited.   *Savage* v. *Putnam, supra.* And it was there said that the liability of the outgoing partner, the other associates having accepted of his transfer in his place and stead, was that of surety only; and it was added: "The money he was compelled to pay and did pay, while holding that position for his principals, he was clearly entitled to recover from them." Therefore, after the substitution and acceptance by all parties, of Barker as partner in the place of Gleason, the members of the new firm were primarily liable for the debt evidenced by the note in suit, and Gleason's position and obligation was that of surety for its payment by them.   While the parties held this relation to each other, the note became the property of Morss, who, as member of the new firm, was primarily liable for its payment.   Now the question arises, could he, holding this position of primary debtor on the note, enforce it against Gleason, who was his surety for its payment ?   Manifestly he could not.   When the note became the property of the principal debtor the liability of the surety thereon ceased. So it is entirely clear that Burton G. Morss, being principal debtor, could not have maintained an action on the note against the defendant, who, as to him, held the position of surety for its payment merely.   Nor did the plaintiff, to whom Morss assumed to transfer the note, hold any better position.   The note was dishonored when transferred, hence it was subject to all existing defenses while in the hands of Morss, the former holder.

If the note had been purchased by the new firm with the funds of the firm, or had the firm become the owner through some arrangement with the holder, the liability of the defendant Gleason, as surety for the payment of the debt, would thereby have been extinguished ; for in that case the debt itself would have been satisfied and extinguished.   The firm would then have done just what it was bound to do — satisfied its own debt ; and the obligation of the surety to the effect that the firm should satisfy the debt would have been discharged.   Nor could the obligation of the surety be renewed without his express consent or a new undertaking on his part.   The case is the same here where satisfaction of

the debt was made to the creditor by one member of the firm. The debt was his debt. The partners were, one and all, liable for its payment. The obligation of the surety was that those liable on the note, one or all, should satisfy it. If satisfied by any one primarily bound to pay it, his obligation was discharged. Whatever rights remained to Burton G. Morss, after he became the owner of the note, growing out of the demand, or its purchase or payment, pertained to the partners themselves, to be adjusted on an accounting and settlement of the partnership. Doubtless one member of a firm may become a creditor of the firm — certainly he may in a qualified sense. He may be compelled to satisfy partnership debts from his individual funds, and thus may be said to be a creditor of the firm. He may also voluntarily buy in notes and take assignments of claims against the firm of which he is a member ; but he cannot take compulsory proceedings thereon *at law* against his partners ; nor can he by any transfer of them confer such right, excepting in the case of commercial paper transferred before maturity to *bona fide* purchasers or transferees.

It is urged that if the transfer of a firm-note to one of the partners satisfies and discharges the debt, as a firm-debt, then the note in this case became satisfied and the debt was discharged on its transfer by Mrs. Gleason to R. H. Gleason ; and the latter having turned it out to Morss as a valid note is estopped from asserting the contrary. In the first place, perhaps, it may be answered that it does not distinctly appear that the note was transferred by Mrs. Gleason to R. H. Gleason. True, he got the note, as the case shows, and delivered it to Morss as a payment on a contract between himself and Morss ; but it does not clearly and explicitly appear but that Mrs. Gleason consented to the use of her own note in the way stated without conferring on Mr. Gleason any title to it whatever. But be this as it may, the defense now interposed does not rest on the assertion that the note was invalid when transferred to Morss. The defense is that its purchase by Morss operated as payment and satisfaction of it, because it was his own debt, and that the defendant's legal position in regard to it was that of surety merely. The case presents no ground of estoppel as regards the defense interposed.

After careful consideration of the case I am of the opinion that the judgment directed by the referee is right and should be affirmed.

An extra allowance of $350, for costs, was made in this case in favor of the defendant ; and from the order giving such additional sum an appeal has been taken. The case is, as it seems to me, a very proper one for an additional allowance ; nor is the amount given by the order unreasonable. The case may well be considered both difficult and extraordinary within the provision of the section of the Code under which allowances are authorized to be made. The order appealed from should be affirmed, with $10 costs.

*Judgment and order affirmed.*