HARDIN, P. J.:

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.

---

IN THE MATTER OF THE FINAL ACCOUNTING OF EDWARD S. DAWSON, JR., AS ASSIGNEE OF THE FIRM OF HENRY M. ASHCROFT AND JOHN B. EDWARDS, RESPONDENT; L. D. V. SMITH, APPELLANT.

*Partnership — in which one member sells out his interest to a party who becomes a member of the firm — assumption of the debts of the old firm.*

Where one member of a firm retires, selling out his interest to a third party, who continues the business with the remaining partner, with whom he enters into partnership, the partnership assuming the debts of the previous firm, and such new firm becomes insolvent and makes an assignment for the benefit of creditors, the creditors of the first firm are entitled to share *pro rata* with those of the second firm in the assets of such second firm.

An assignment provided that the assignee should, after paying the costs and expenses of executing his trust and the preferred creditors, pay all the debts and liabilities of the firm in full if the assets were sufficient; if not, the unpreferred creditors were to be paid *pro rata*.

*Held*, that, under the terms of this assignment, the creditors of the old firm, the payment of whose claims had been assumed by the new firm, were entitled to be considered as creditors of such new firm, and to be paid *pro rata* with the other creditors thereof, and that the assignee was not at liberty to disregard the directions in this respect contained in the assignment.

APPEAL by Leonardo D. V. Smith from an order of the County Court of Onondaga county, entered in the office of the clerk of that county on the 31st day of July, 1890, with notice of an intention to bring up for review, upon such appeal an order confirming the report of the referee directing the assignee to distribute the moneys in his hands, as such assignee, among the creditors of the firm of Ashcroft & Edwards only.

*Hoyt, Beach, Hancock & Devine*, for the appellant.

*H. E. Miller*, for the respondent.

MARTIN, J.:

On and prior to June 25, 1889, L. D. V. Smith and H. M. Ashcroft were copartners in the grocery business in the city of Syracuse, N. Y., doing business under the firm name of Smith & Ashcroft. On that day Smith, who was an equal partner, sold his interest to John B. Edwards, who became a partner of Ashcroft, and the business was continued under the firm name of Ashcroft & Edwards. At the time Smith sold to Edwards the firm of Smith & Ashcroft was solvent, and worth from six to seven thousand dollars over and above its liabilities. Edwards took Smith's interest, subject to one-half of all outstanding debts and obligations against the firm of Smith & Ashcroft, which he assumed and agreed to pay.

On the 15th of January, 1890, the firm of Ashcroft & Edwards made a general assignment for the benefit of their creditors to Edward S. Dawson, Jr., who accepted the trust, filed his bond and entered upon the discharge of his duties. From fifty to sixty per cent of the assets that came into the hands of the assignee under that assignment was the property owned by the firm of Smith & Ashcroft at the time of the transfer of Smith's interest

to Edwards. The assignee realized from the property which came into his hands the sum of about $4,000, while the debts of the assignors amounted to about $9,500, including the debts contracted by Smith & Ashcroft.

On June 27, 1890, the assignee made and filed an account of his proceedings, and citations were issued upon his petition. An order was subsequently made referring the matter to a referee to take and state the assignee's account, and to take proof and report as to what persons were entitled to share in the distribution of the assigned estate, and in what priority, and in what proportion. Upon the hearing before the referee the assignee filed objections to the payment of certain claims for goods which were sold to the firm of Smith & Ashcroft. These debts were proved against the estate by the holders thereof. In the inventory or schedule filed by the assignee, and verified by both assignors, the claims to which the assignee objected were included and intermingled with those of other creditors and set out as debts of the firm of Ashcroft & Edwards.

On July 16, 1890, the referee's report was filed, wherein he found that the claims to which the assignee objected should be disallowed, and that the creditors of Ashcroft & Edwards should be paid their claims in full, and should there be any surplus after the payment of such debts, then it should be applied to the debts of the firm of Smith & Ashcroft *pro rata*. On July thirty-first an order was entered confirming this report and directing that the assignee pay the creditors in the order mentioned. From this order an appeal was taken by the appellant.

The proof taken in this proceeding shows quite conclusively that the transfer by Smith to Edwards was made with the consent of Ashcroft, and that the firm of Ashcroft & Edwards assumed the payment of the debts and liabilities of the firm of Smith & Ashcroft.

This seems to be very clearly established by the evidence of the witnesses Smith, Ashcroft, Watson and Pardee. Besides the manner in which the business was conducted by the new firm, the fact that it continued paying the debts of the old, and the further fact that the debts of the old firm were included in the schedules of the debts of the new, and verified by both Ashcroft and Edwards, all lead naturally and necessarily to the conclusion

that the new firm assumed the debts of the old. The evidence and the acts of the parties were wholly inconsistent with any other theory.

Assuming, as we think we must, that the debts of the old firm were assumed by the new, it follows that the new firm became the principal debtor, while Smith, the outgoing partner, was a mere surety for the payment of the old firm debts. (*Savage* v *Putnam*, 32 N. Y., 501; *Morss* v. *Gleason*, 64 id., 204.) This relation between the parties the creditors of the old firm were bound to observe. If they had notice of the transfer by Smith and the relations assumed by the new firm, upon Smith's request, it would have been their duty to have collected their debts of that firm; and if through their neglect to comply with such request the debts became uncollectible, Smith would have been discharged. (*Colgrove* v. *Tallman*, 67 N. Y., 95; *Calvo* v. *Davies*, 73 id., 211; *Hunt* v. *Purdy*, 82 id., 487; *Palmer* v. *Purdy*, 83 id., 147; *Grow* v. *Garlock*, 97 id., 81 )

While it is true that the question here is not whether Smith could have compelled the creditors of the old firm to enforce their claims against the new if it had remained solvent, and hence the authorities cited by the respondent have no application, still the doctrine of the authorities, cited above, shows that the transactions between the parties had the effect to constitute the new firm, the principal debtor to the creditors of the old, with Smith remaining liable as surety only, and that Smith had a right to insist that these debts should be paid from the assets of the principal debtors, at least so far as to share *pro rata* with the other general creditors of that firm.

This was both equitable and just. As we have already seen, from fifty to sixty per cent of the assets that came to the hands of the assignee consisted of property that formerly belonged to the old firm and was transferred to the new. The property transferred to the new firm was held by it, charged with a trust for the payment of the debts of the old. (*Morss* v. *Gleason*, 64 N. Y., 205, 207.)

Moreover, the assignors, by their assignment, dedicated their property to the payment of the debts in question, as well as the debts subsequently contracted. The debts of the old firm were recognized by the assignors as the debts of the new, and were included

in their verified schedule as such. The direction to the assignee contained in the assignment was that he should, after paying the costs and expenses of executing his trust and the preferred creditors, pay all the debts and liabilities of the firm in full, if the assets were sufficient, if not, the unpreferred creditors were to be paid *pro rata.* The debts in question were included within that provision. (*Chapin v. Thompson,* 89 N. Y., 271.)

It may be observed, in passing, that the objections to the payment of the debts in question were not made by the other creditors, but by the assignee alone. He seems to have deemed it his duty to object to these debts, notwithstanding the fact that the assignors were liable therefor, and had included them in the schedule of debts which were to be paid by him. In the *Matter of Lewis* (81 N. Y., 424) the court, in discussing the question of the effect of an assignment upon the duties of an assignee, and the power of a court to direct the assets in the hands of an assignee to be distributed otherwise than in accordance with the provisions of the assignment, said : " The assignee derives all his power from the assignment, which is both the guide and measure of his duty. Beyond that, or outside of its terms, he is powerless and without authority. The control of the court over his actions is limited in the same way, and can only be exercised to compel his performance of the stipulated and defined trust, and protect the rights which flow from it. He distributes the proceeds of the estate placed in his care according to the dictation and under the sole guidance of the assignment, and the statutory provisions merely regulate and guard his exercise of an authority derived from the will of the assignor. The courts, therefore, cannot direct him to pay a debt of the assignor, or give it preference, in violation of the terms of the assignment and the rights of creditors under it. To hold the contrary would be to put the court in the place of the assignor and assert a right to modify the terms of the assignment, after it had taken effect, against the will of its maker, and to the injury of those protected by it. We agree that the assignee is merely the representative of the debtor, and must be governed by the express terms of his trust." We are of the opinion that neither the assignee nor the court was justified in rejecting the debts in question, but that they were debts of the new firm ; that the holders thereof were entitled to share *pro rata* with the other

unpreferred creditors of that firm; and that the appellant had a right to insist that they should be so paid.

The assignee claims that the appellant was not interested in the proceeding, and, therefore, not entitled to prosecute this appeal. We think otherwise. We think he was a party in interest, and that this appeal was properly taken.

It follows that the order appealed from should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Order reversed, with costs to the appellant, payable out of the fund in the hands of the assignee, and report of referee set aside.