### BAGLEY v. PETTIBONE.

*(Superior Court of Buffalo, Equity Term.*   July 20, 1892.)

CONTRIBUTION—JOINT JUDGMENT—RELEASE—EVIDENCE.

In an action for contribution it appeared that a receiver recovered a joint judgment against W. and defendant's intestate as stockholders, which W. paid. Defendant contended that W. released intestate, and one witness testified that at a time when the grounds for the judgment existed W. offered to deed certain property to intestate for his "interest" in the company. At that time there were large undivided profits, but the stock had lost its earning power. W. testified that the transfer was for intestate's interest in the profits, and not for the stock. *Held,* that defendant failed to overcome the *prima facie* liability for contribution.

Action by Mary W. Bagley against Stoughton Pettibone to compel contribution. The death of defendant was suggested, and Lauren W. Pettibone, his administrator, was substituted in his place. Judgment for plaintiff.

*L. N. Bangs,* for plaintiff.    *David Miller,* for defendant.

HATCH, J.   Upon the testimony in this case it appears without dispute that Woodruff and Stoughton Pettibone were stockholders in the Hydrostatic Paper Company; that said company was dissolved by action, and a receiver appointed of its property; that such receiver recovered a joint judgment against Woodruff and Pettibone for and on account of their liability as stockholders in said company; that Woodruff thereafter paid said judgment in full, and Pettibone has paid nothing. Upon these facts it is conclusive that Pettibone is legally bound to contribute one half of the sum paid by his codefendant. This result is not combated by defendant. What is claimed is that Woodruff released Pettibone from all liability on account of the claim out of which the judgment arose before it was obtained, and consequently, as between them, it was the sole debt of Woodruff. For its support this claim rests upon a single, isolated statement, claimed to have been made by Woodruff during a negotiation between himself and Pettibone. At this time the parties stood to each other in this attitude: Both held an equal amount of stock. The earnings of the stock, over and above expenses, was $66,000. Each was entitled to $33,000. Not only was this sum due each, but it represented all there was of value in connection with the company, as its earning power had ceased. The ground upon which the receiver's judgment was obtained then existed, and, so far as appears, was not thereafter changed by any act of either party. It was under these conditions, and during negotiations for a settlement of the accounts, that Lauren Pettibone testifies he heard Woodruff say to the deceased, "I will deed you the Washington property in exchange for your interest in the Hydrostatic Paper Company." It is claimed that this statement necessarily embraced the stock held by Pettibone, but it does not say so in words. The earnings were an interest, and the only interest of value. It is therefore as fair an inference that the thing of value was the thing negotiated about, and about which the proposition was made, as it is to say that it embraced property of no value, with respect to which it does not appear that a single word was said, beyond the quoted words. We may bring to our aid, under such circumstances, the well-understood reasons which move a person to secure to himself property or rights to which he is entitled. The $33,000 was not there in money. Woodruff had that, and it is quite evident that Pettibone wanted it or its equivalent. That was his interest; and, when that was secured, his troubles, in a property sense, were over. I think the statement clearly susceptible of such limitation. But, if it be conceded that the proposition embraced the stock, I do not think defendant is aided. The liability upon which the judgment was founded then existed. So far as appears, it was not and could not be shifted by a mere transfer of the stock. There is nothing to be found in the testimony which shows, or tends to show, that a word passed or was said

by either Woodruff or Pettibone about the existent action, or any contingent liability arising thereon; while there is not a word in the proposition which in the remotest manner refers to it. It appears to me that it would be doing violence to both law and language to now infer that the parties at the time intended that Pettibone should receive full compensation for his interest in the company, and be relieved from liability; that Woodruff should pay and assume it. The authorities relied upon by defendant have no application to such a case. In *Savage* v. *Putnam*, 32 N. Y. 501, certain members of a firm assigned their interest, with the assent of their copartners, to solvent parties, and it was expressly stipulated by all that the retiring partners should cease to be liable for debts then existing. As between the parties thereto, it was held that the assignors ceased to be liable for the partnership debts. In *Morss* v. *Gleason*, 64 N. Y. 204, a partner sold out his interest in the firm to a third party. It was held that such person acquired a right to an accounting in respect to the partnership effects, and that such property was held in trust for the payment of the firm's debts; that the retiring partner was surety for the debts of the firm to the extent that the assets were sufficient to pay and discharge; that, inasmuch as there were sufficient assets at the time of the transfer to pay and discharge all debts, he was not liable upon a note held by his wife against the firm, which he caused to be transferred to one of the partners upon an independent transaction; that the only effect was to give such partner, as against his copartners, a greater interest in the trust property. In *Finley* v. *Fay*, 17 Hun, 67, a partner was indebted to the copartnership in a large amount. He sold out all his right, title, and interest to his copartners, who covenanted to save him harmless from all firm debts. It was held that the agreement operated to discharge the debt. In two of these cases the exemption from liability rests upon an agreement. In the third, so far as the law operated to create liability independent of express covenant, the facts showed sufficient property to meet it, and the determination of the court was based upon that consideration. I am not able to see their application to the facts of this case.

There is another view of this action which I think should obtain. Woodruff denies that he ever proposed to purchase the interest of Pettibone in the stock of the company, but insists that the whole negotiation related to Pettibone's share of the profits; that for this sum, and that alone, he transferred the property. Both Woodruff and the present defendant are to be treated as interested witnesses. The liability against Pettibone's estate rests upon the judgment. *Prima facie* this makes out a case for plaintiff. Upon defendant rests the burden of overthrowing it. An analysis of Mr. Pettibone's testimony shows that there was a conversation about matters connected with the paper company, and about matters connected with the Washington street property, which lasted for twenty minutes or half an hour, at the time when the claimed proposition was made and accepted; that these matters were not only talked over at this time, but they had been the subject of conversation several times before. Mr. Pettibone was unable to give the conversations, or any of them, in detail, or to give the substance of them. He did not claim an accurate recollection, or any but the most general remembrance, and this related to the time when the conversation was held, as well as to its matter. In addition to this, he did not claim that he paid particular attention to the discussion until the words already quoted were spoken; so that what preceded or followed these words, whether they were in any respect qualified, or whether the interest mentioned embraced the stock or was limited to the amount due as profits, we do not know. No reflections need be cast upon this testimony, or upon the veracity of the witness; for when we take into consideration the imperfections of memory, the blending of ideas, the confusion liable to be created by different conversations covering some period of time, the liability of the person speaking to fail in clearly expressing his meaning,

and of the person listening to misunderstand him, the length of time which has elapsed since the statement was made, and, above all, the conceded fact that the whole conversation is not given, it is enough to say that such testimony must rank very low as evidence, even though it comes from a witness of unquestioned veracity. Taking this view of the evidence, I think it is entirely insufficient to sweep away the liability created by the judgment, coupled with the other conceded facts. Judgment is therefore ordered in favor of the plaintiff for the amount of the contribution asked, with interest and costs.