## P. J. WILLIS & BRO. v. A. L. MORRIS.

### (Case No. 1559.)

1. FRAUD.— When a composition agreement has been made between a debtor and all his creditors, to pay them each in discharge of his debt a specified *per centum* of the amount owing, in a designated time, and there is a secret agreement between the debtor and one of the creditors that the debtor shall execute his note for the unpaid balance of his original debt, and such note is executed,— its payment cannot be enforced, for it is tainted with the fraud of the secret agreement.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Suit by P. J. Willis & Bro., on three notes signed by appellee and one Franklin, who, not being served, was dismissed. By amended original answer appellee alleged that P. J. Willis & Bro. and other creditors had, some two years before, levied attachments on his stock of merchandise, and afterwards agreed that he might sell the stock to one Christian, who was to give his notes to the creditors and they to release their attachments, all of which was done, and afterwards others of his creditors attached the stock in Christian's hands and put it out of Christian's power to pay the notes he had given plaintiffs; thereupon all parties agreed that the sale by Morris to Christian should be canceled, and a composition was signed by Morris' creditors by which they agreed to accept fifty per cent. cash of their respective debts in full discharge of same; also to deliver up Christian's notes given for the stock of goods. That plaintiffs were the first to sign this composition, and wrote a circular letter to his (Morris') creditors recommending them to sign the composition;

that all his creditors did sign and were paid the fifty per cent. composition; that at the time P. J. Willis & Bro., by their agent, Jas. Farley, signed the composition, there was a secret understanding and agreement between him (Morris) and said Farley that he (Morris) would pay P. J. Willis & Bro. in full, and afterwards, when the notes of Christian were demanded from P. J. Willis & Bro. under the terms of the composition, they declined to deliver them unless he (Morris) would execute his notes with security for the remaining fifty per cent., and thereupon he executed and delivered the notes sued on; that said notes were without consideration and in pursuance of the said recent agreement; that by making said recent agreement and exacting the said notes plaintiffs committed a fraud on all the other creditors. This answer was sworn to.

Plaintiffs excepted to this answer on the ground that the defendant, maker of a note, cannot be heard to allege that it was intended as a fraud on his creditors. Court overruled this exception.

Plaintiffs by first supplemental petition to amended original answer excepted to the answer on the ground that Morris could not be heard to allege that he gave the notes to close an illegal transaction; replying to answer, that plaintiffs were fully secured by lien of attachment levy, and at Morris' request and to assist him, released their levy, on his promise to pay fifty per cent. to them and to give his notes for the balance; and notes sued on are part of the notes so given. That there was no agreement with other creditors that Morris should get consent of all creditors to accept fifty per cent., and if he did not, that he should not have his release. But it was expressly understood that Morris should have the right to pay those creditors he chose in full.

Submitted to the court without a jury. The court found its conclusions of fact as follows:

"That there was a composition agreement made between the creditors of defendant, Morris, and the said Morris, by which the plaintiffs and the other creditors agreed to release Morris from his indebtedness to them upon his paying them fifty cents on the dollar in money on the claims within twenty days; that the composition agreement was signed by plaintiffs and the other creditors and Morris; that Morris paid to the plaintiffs and to the other creditors the fifty per cent. of the several amounts within the twenty days, and that at the time of said composition agreement there was a private agreement between said Morris and plaintiffs, unknown to the other creditors, that Morris would give to plaintiff his notes for the balance of their claim against him. I conclude from the evidence that

Morris, in subsequently executing the notes sued on, was simply carrying out his former secret agreement with plaintiffs to pay them one hundred cents on the dollar, and I find that there was no duress in the execution of the note."

The court's conclusion of law from the above was "that the notes sued on were tainted with the fraud of the secret agreement, and are not recoverable or binding." Judgment was accordingly rendered for the defendant, Morris.

*Mann & Baker*, for appellants, cited: Hoeser v. Kraeka, 29 Tex., 450; Hunt v. Turner, 9 Tex., 389; Epperson v. Young, 8 Tex., 136; Donley v. Tindall, 32 Tex., 55; Danzey v. Smith, 4 Tex., 415; Chuck & Bros. v. Mesritz, 2 Woods, 204; Lewis v. Chase, 1 P. Wms., 620; Pfeuffer v. Maltby, 54 Tex., 455; De Leon v. Trevino, 49 Tex., 95; Brooks v. Martin, 2 Wall., 70.

*Ballinger & Mott*, for appellee (but their briefs are not with the transcript).

WALKER, P. J. COM. APP.— The first error assigned is that the court erred in finding as a fact on which to base its conclusion of law, that defendant, A. L. Morris, "was simply carrying out his former secret agreement with plaintiffs to pay them one hundred cents on the dollar," in that Morris testified in his own behalf that he "made the secret agreement with Willis & Bro.'s agent in order to get their signature to the composition. *When he promised to give the extra fifty per cent. to Willis & Bro. he did not intend to do so, and signed the notes under the coercion of threats and by reason of their refusing to surrender Christian's notes.*"

The finding of the court upon the above stated fact is supported by evidence tending to establish it; and, as has been repeatedly decided, in such case the finding of the court is as conclusive as if found by a jury, or in cases where the evidence is conflicting. Mathis v. Oberthier, 50 Tex., 329; Jordan v. Brophy, 41 Tex., 284. The facts as found were that there was such secret agreement at the time when the composition was entered into, and that it was subsequently carried out by the execution and delivery of the notes in suit, which were voluntarily made and not under duress. It was a question of fact to be determined under all the evidence whether or not Morris, at the time he had the secret understanding with Farley as the plaintiffs' agent, did agree and promise to pay the plaintiffs one hundred cents on the dollar; if such was the fact, and these notes were given in pursuance of that agreement, and without duress, the notes

became thereby connected directly with such promise, which is the true consideration for which they were executed.

There were circumstances shown in the evidence to show that the defendant made the secret understanding to pay the plaintiffs their whole debt, and that it was so understood and so acted upon by Farley, even though it may have been true that the defendant mentally reserved an intention to avoid, if possible, carrying out his agreement, after he should have succeeded in inducing Farley to sign the composition deed, and aid him in inducing the other creditors to do likewise.

Previous to these transactions, the defendant being pressed by certain of his creditors with attachments on his goods, the plaintiffs being of the number, an arrangement of compromise was effected whereby one L. W. Christian took and bought the goods, and for the purchase money thereof gave his notes to said attaching creditors for the amount of their debts, and he paid also on the same account $5,000 to the defendant. Other creditors then proceeded to attach the goods in Christian's hands for debts due them by the defendant. Christian, claiming that he had been imposed upon by fraud, sought a cancellation of the trade, which defendant agreed to, and refunded to him the above amount he had received, and the other creditors to whom Christian had given his notes agreed to return the notes received by them under an agreement of composition whereby the defendant was to pay all his creditors fifty per cent. of their debts. P. J. Willis & Bro. holding certain of those Christian notes, Farley testified that he refused to sign the agreement of composition in behalf of Willis & Bro. unless Morris would promise to pay or secure them for the remainder of their debt over and above the fifty per cent. above mentioned, and that Morris did so promise. That the secret understanding between him and defendant was that the Christian notes were not to be given up until defendant had given his own notes with indorsement for the remaining fifty per cent. of the Willis & Bro. claim. That the instructions not to surrender the Christian notes were given by witness because the defendant had promised at the time of signing the agreement to give his own indorsed notes for the remaining fifty per cent. The defendant in his testimony admits that there was a secret agreement with Farley to the effect that he would execute notes for the unpaid fifty per cent. He stated also that plaintiffs refused to surrender the Christian notes unless the contemplated notes for the extra fifty per cent. were given " according to the secret agreement " between himself and Farley. He refused to execute the notes; a demand

was made on plaintiffs for the return of the fifty cents he had paid, which was refused, as also they refused to give up the Christian notes. The defendant finally, as he states, was frightened into giving the notes by the threats of Harris, acting for the plaintiffs, that he would give him trouble, etc.

This evidence, we think, clearly is sufficient to support the finding by the court complained of, notwithstanding defendant's declaration quoted in the assignment of error. The evidence is clear as to the making of the agreement, and however reluctant it may indicate the defendant was to comply with it, or however determined he may originally have been not to do so, there is sufficient evidence to show that at last the notes in suit were given in pursuance and in accordance with it. The finding that they were not given under duress is warranted by the evidence. It is true that the statement in evidence by the defendant as to what was his object and intention in entering into the secret understanding with Farley may have been competent evidence as to that fact (Whelden v. Wilson, 44 Me., 18, 19; Lawton v. Chase, 108 Mass., 241; 1 Greenl. Ev., sec. 53 (13th ed.), note 3); nevertheless it was evidence subject to be weighed and compared with other evidence, and its credit to be determined by the court. It was not, of course, conclusive of the facts stated. This ground of assigned error is not, we think, well taken.

It is assigned as error that "the defendant, A. L. Morris, by first amended original answer, alleged fifty per cent. composition with his creditors, and secret promise to pay plaintiffs in full, and that notes sued on were given to plaintiffs in pursuance of this promise for the extra fifty per cent. above the composition amount, and that the plaintiffs could not recover on the notes, as they were a fraud on himself and all his creditors. By second supplemental petition plaintiffs demurred to this answer on the ground that Morris could not be heard to defend against the notes on the ground that they were a fraud on his creditors. The court erred in overruling this demurrer, and this error is apparent upon the record by the judge's conclusions of law."

The cases cited by appellants' brief do not support the above proposition, and mainly have application to the effect and consequence as to executed contracts which are fraudulent or otherwise illegal, or as to the effect of a secret fraudulent preference reserved to one of a debtor's creditors who with them has entered into a composition of their debts together on equal terms.

In the latter case it is held that the debtor's contract with the others is void. Chuck v. Mesritz, 2 Woods, 204. The other cases

cited mainly relate to the doctrine that courts will not relieve where the contract has been executed between parties mutually participating in a fraud, and other like familiar instances of the application of the law to contracts that have been executed in fraud or against public policy.

The proposition contended for in this assignment is denied as being sound law, and the reverse doctrine is held by the authorities.

"It is generally laid down that a person can set up in defense to an action upon a contract that the contract was made in fraud of creditors or others. Nor will the character of such agreement be changed by showing that the claim of the third party whose rights were to be affected by it was also fraudulent. Hence, one may show that a note made by him was executed to the payee and plaintiff in fraud of creditors or others. . . . An undertaking between a debtor and one of his creditors in effecting a composition of his debts, by which he agrees to a secret preference of such creditor, renders the whole composition invalid; and the debtor himself can plead such secret agreement in an action upon the contract of composition." Bigelow on Frauds, pp. 342, 343, and authorities there cited. See, also, 1 Story, Eq. Jur., secs. 378, 379; Kerr on Fraud, 214; 1 Addison on Contracts, sec. 264.

The case of Howe v. Litchfield, 3 Allen (85 Mass.), 443, is a case the facts of which are quite similar to those in this; it may be deemed precisely in point, and it holds that the holder of the note given to him by the debtor could not recover on it; that it was invalid, and stood upon no higher footing than if the note had been given to induce the creditor to whom it was given to execute the agreement of composition. See, also, Harvey v. Hunt, 119 Mass., 283.

In accordance with the maxim, "*Ex turpi causa non oritur actio*," "nothing is better settled than that, in regard to contracts which are entered into for fraudulent or illegal purposes, the law will aid neither party to enforce them while they remain executory, either in whole or in part, nor, when executed, will it aid either party to place himself *in statu quo* by a rescission, but will in both cases leave the parties where it finds them." 7 Wait's Act. & Def., 69, and cases cited.

It is clear from the authorities that the defense set up by the defendant was a good one, and that he was entitled to interpose it against the note in the hands of the plaintiffs.

3d. The court erred in concluding, as matter of law, that the notes were "tainted with the fraud of the secret agreement and are not

recoverable or binding on the defendant:" (*a*) In that the composition was only an agreement between Morris and his creditors, and not between creditors *inter se*. (*b*) In that composition articles expressly provided that Morris was only required to get a majority of his creditors to agree to release him on payment of fifty per cent., and it was competent by its terms for Morris to make any payment he pleased as to claims of any one of his creditors, after settling with the majority of his creditors.

To the first-named objection it is to be replied that the plaintiffs and the defendant were, together with those creditors who entered into the composition agreement, parties to it, and the plaintiffs were bound to the exercise of good faith in preserving the equality of payment of the debts of defendant which the terms of the agreement contemplated, and it forbade the making a secret understanding in derogation of it, whereby they would secure a greater advantage than their associates would obtain under the composition.

To the second ground it is sufficient to say that, if it had turned out that the defendant, under the agreement entered into of composition, had succeeded in obtaining a majority only, and not the whole of his creditors, to join in it, that as the secret understanding was entered into before, and was carried out contemporaneously with, the signing by plaintiffs of said composition agreement, the principles of law which we have seen apply to the subject would have full operation and effect upon the validity of the contract which contemplated the payment of plaintiffs the entire amount of their debt, regardless of whether some of defendant's creditors saw proper to join in the composition or not. It would have been a fraud upon the creditors who did join in it, and could not be upheld.

The composition agreement obligated the creditors to give Morris a release if he paid them fifty per cent. cash within twenty days after all the creditors had signed. It was further provided that, if Morris could not obtain the consent of all his creditors to the agreement, but could secure the consent of such a majority of them as would enable him to replevy his merchandise against those refusing to accept the compromise, then those who did sign bound themselves to give him his discharge on the payment of the fifty per cent. Those who may have entered into the agreement bound themselves, in connection with the plaintiffs, to discharge the defendant on the condition that the defendant could be placed in a position whereby he could sufficiently control his means, by relieving his goods from attachments, as would enable him to pay a majority of consenting creditors fifty cents on the dollar, to each of

them.    They were all bound to the observance of the terms of the agreement, which gave them all alike an equal participation in the fruits of these stipulations; and if a less number than the whole of defendant's creditors entered into the agreement, the plaintiffs were not less bound to abstain from making the terms which they did make through their agent, Farley.    In point of fact, all the creditors did sign, and were paid the fifty per cent.

The fourth error assigned is that "the court erred in finding that the notes were tainted with fraud, in that evidence shows that the plaintiffs were amply secured at the time they recommended other creditors to accept the composition, and for plaintiffs to get more than the other creditors would be no hardship or fraud on other creditors."

The plaintiffs, in effect, agreed to relinquish the security they had obtained when they entered into the agreement of composition, and the question is whether the agreement that was entered into by all the parties was one which required the plaintiffs to accept fifty per cent. in common with the other creditors.    Such was the agreement, except for the secret understanding had, and that was a fraud upon the agreement of composition.    See 1 Daniel's Neg. Inst., sec. 194; Doughty v. Savage, 28 Conn., 146.

The fifth assigned error is that "the court erred in holding that the notes could not be enforced against defendant, in that evidence shows that the notes were not executed until after all the creditors had been paid the fifty per cent. composition.    If the agreement of plaintiffs and defendant, that defendant should pay plaintiffs fifty per cent. more, was fraud on defendant's other creditors, it was because it was in the nature of a participation of plaintiffs with defendant in the proceeds of a combination by plaintiffs with defendant against defendant's other creditors, and the notes were executed by defendant in adjustment of profits, and when executed became a new, subsequent contract, enforcible by law, even if plaintiffs could not have compelled defendant to have paid the money on his oral promise."

The consideration of the notes relates back to the time when the plaintiffs and defendant stipulated that they should be given; and it is not a matter of importance whether they were given, if in pursuance of that secret understanding, before or after the payments made to the creditors.    They were tainted with fraud, and their enforcement being executory, the case is not to be assimilated to the doctrine that parties to an illegal contract may have their rights adjusted as to the proceeds resulting from such contract after it has been executed and served its purpose.    The cases of Pfeuffer v.

Maltby, 54 Tex., 455, and De Leon *v.* Trevino, 49 Tex., 95, cited in appellants' brief, do not apply.

The erudite written argument of Mr. Mann, of counsel for the appellants, deserves notice. It reviews the cases, English and American, on which, as he urges, is rested the doctrine held by Justice Story in his work on Equity Jurisprudence, and by Bigelow on Frauds, and decided cases in our state courts, referring specially to Gilmour *v.* Thompson, 49 How. Pr., 198; Harvey *v.* Hunt, *supra;* Howe *v.* Litchfield, *supra,* and maintains that those text-writers, and those courts in the opinions delivered in the cases referred to, base the doctrine of the invalidity of such secret preferences given to creditors as between the debtor and the secretly preferred creditor on decisions in England which were based upon what was deemed the proper construction of such transactions in view of the operation and effect to be given to bankrupt and insolvent statutes then in force, as distinguished from a doctrine of legal or equitable jurisprudence applicable to the abstract question.

With whatever accuracy of analysis and refinement of learning the history of the line of decisions referred to may be traced in pursuing adjudications on this subject back to early sources, we think that it must be conceded that the doctrine as it is now held in the authorities we have cited is now at all events well and firmly established as sound law; too much so to be shaken, especially as it is rested by the courts and text-writers of the highest authority on the broadest maxims of equity, and not upon the more limited view of adapting its application to subserve the integrity of particular bankrupt statutes or insolvent acts, or to maintain the policy of the law in making such effective.

Bigelow, in his treatise on fraud, p. 342, treating of the voidness at law of security taken by a creditor who is a party to a composition agreement like this, for the residue of his demand, says that it is thus void because it is a fraud; — a fraud on the rest of the creditors. Citing Jackson *v.* Davison, 4 Barn. & Ald., 695; Wells *v.* Garling, 1 Brod. & B., 452; Fay *v.* Fay, 121 Mass., 561; Sternburg *v.* Bowman, 103 Mass., 325. And he adds, that "this doctrine was established in equity before it was recognized by courts of law, and continues in force there notwithstanding it has become a matter of legal cognizance." Citing Jackman *v.* Mitchell, 13 Ves. Jr., 586; Constantein *v.* Blache, 1 Cox, Ch., 287; Fawcett *v.* Gee, 3 Anstr., 910; Middleton *v.* Onslow, 1 P. Wms., 768.

Kerr on Frauds, pp. 214, 215, rests the doctrine on the same footing — the equity jurisdictional head of fraud, and adds, "In modern

times, the same rule has been acted on at law." That author cites numerous English and American cases.

We conclude upon the whole case that there is no error, and the judgment ought to be affirmed.

AFFIRMED. ·

[Opinion adopted March 13, 1885.]