M. T. Hickman, Jr., v. Galveston Dry Goods Company.

Decided April 12, 1906.

**Bankrupt—Composition—Preference.**

   One who has been adjudged a bankrupt may pay one of his creditors more than the others, provided the transaction is fair and open, and known to and acquiesced in by all concerned.

Appeal from the District Court of Galveston County.  Tried below before Hon. Frank M. Spencer.

*Hutcheson, Campbell & Hutcheson,* for appellant.—Cited, Willis v. Morris, 63 Texas, 458; Dansby v. Freiberg, 13 S. W. Rep., 331; In re Chaplin, 115 Fed. Rep., 163; Blandenburg on Bankruptcy, 10th ed., pp. 211, 212; In re John M. Frier, 10 Am. Bank. Rep., 199.

*James B.* and *Charles J. Stubbs,* for appellee.—The agreement between the plaintiff on the one hand, and the bankrupt and his other creditors on the other hand, was lawful, and the consideration for the notes sued on was a valid and valuable one.  In re Shaw, 9 Fed. Rep., 495; Bissell v. Jones, 19 L. T. (N. S.), 262; Ex parte Nicholson, 22 L. T. (N. S.), 286; Willis v. Morris, 63 Texas, 458; Dansby v. Freiberg, 13 S. W. Rep., 331; Jackman v. Mitchell, 13 Ves., 581; Kellog v. Richards, 14 Wend., 116; Smith v. Stone, 4 G. & J., 310; Cont. Nat. Bank v. McGeoch, 92 Wis., 286, 66 N. W. Rep., 606; Bowen v. Mety, 54 Iowa, 394, 6 N. W. Rep., 551; 8 Cyc., 479, note 60, citing Frost v. Gage, 3 Allen, 560, 8 Cyc., 482; 6 Am. & Eng. Ency. of Law, 395; Davidson v. McGregor, 8 Mees. & W., 755.

A debt which has been discharged in bankruptcy is not a debt paid. The moral obligation remains, and it is sufficient consideration for a new promise to pay given after the composition or discharge.  Collier on Bankruptcy, 619; Mutual R. & F., etc. v. Beatty, 93 Fed., 748.

GILL, Chief Justice.—The Galveston Dry Goods Company, a corporation, brought this suit to recover upon two promissory notes each for the sum of $915.50, executed, delivered and payable to it by Leo and J. Bergman and M. T. Hickman, Jr.

The defendant Hickman, among other things, pleaded in defense that the consideration of the two notes was illegal because it was a part of the entire amount due to the plaintiff by Leo Bergman, who was a defendant in bankruptcy and who, after he had been so adjudged, entered into a composition with his creditors to settle at 40 percent of his indebtedness to them.  That, as a result of a secret agreement with plaintiff, Leo Bergman executed to plaintiff secured notes for the full sum of plaintiff's claim against the bankrupt to induce plaintiff to assent to the composition.  That the previous notes in the series thus executed had been paid in full, and plaintiff had thereby already gotten more than 40 percent of its debt according to the terms of the composition.  Hickman and J. Bergman were averred to be sureties on the notes.

These allegations were denied by plaintiff.

A trial to the court without a jury resulted in a judgment for the plaintiff according to the terms of the notes sued on, and defendant Hickman has appealed.

We condense the following from the findings of fact of the trial judge which we adopt as having sufficient support in the evidence:

Leo Bergman, a merchant at Trinity, Texas, was adjudged an involuntary bankrupt on January 19, 1903, and the trustee appointed took possession of his assets which consisted chiefly of a stock of goods, worth about $4,000 if the business should be continued, but if disposed of in bankruptcy would probably have brought $2,000 or $2,500. There were also some accounts, the value of which does not definitely appear.

The bankrupt undertook to effect a composition with his creditors at 40 cents on the dollar, which required between $4,000 and $4,500. One of his creditors offered to advance $2,650 of the necessary amount, and plaintiff was applied to to make up the balance, which it refused to do unless arrangements could be made which would be satisfactory to the other creditors and all concerned. Thereafter, on January 31, a creditors' meeting was held, at which, after discussion, it was agreed that the other creditors, a majority of whom were represented at the meeting, should receive in cash the $2,650 which had been raised by or for Bergman. That plaintiff should receive no part thereof, but that the assets should be turned over to plaintiff by and with the consent of the creditors in order that plaintiff might use them in realizing its debt (and costs which it agreed to advance) or so much thereof as it might be able to realize. In pursuance of this agreement the composition was made, the money turned over to the other creditors, and plaintiff became the owner of the assets which were turned over to it by the trustee in bankruptcy under the instruction of the referee, to whom the terms of the composition were fully disclosed, and with the consent of the debtor. The delivery of the assets was made upon the date of the composition. The agreement was openly made, was voluntary as to all concerned, was fully concurred in by the debtor and the other creditors, was without fraud or constraint, and it was fully understood that plaintiff would in this way probably ultimately recover a greater proportion of its debt than the other creditors did. Plaintiff's debt with interest to January 31, 1903, was $3,203.94 and 40 percent thereof was $1,281.57 and plaintiff advanced cash for costs in the matter of the bankruptcy in the sum of $133.15, which was a part of the agreement. The agreement vesting the assets in plaintiff enabled the other creditors to get their 40 percent in cash, and was to enable plaintiff to collect its entire debt if, by the handling of the assets, it was able to do so. If the estate had been administered in bankruptcy the creditors would probably have finally received much less than 40 percent. There was no agreement of any kind between the bankrupt and the plaintiff prior to that made at the creditors' meeting either as to the terms or conditions upon which plaintiff would assent to the settlement, or regarding the disposition of the assets.

On February 2, 1904, plaintiff sold and delivered the stock of goods and accounts to defendant and to Leo and J. Bergman, taking therefor six notes aggregating the face of plaintiff's debt and interest and the

costs paid by it. The first four have been paid. The last two are unpaid and are the notes sued on.

The record also supports the conclusion that the plaintiff, in taking the assets in the composition, not only assumed the costs of the bankruptcy proceeding, but such other debts as might be proved against the bankrupt within the twelve months succeeding the date of the bankruptcy.

As to whether the agreement to re-sell the property to the bankrupt after the composition had been effected and for a sum equal to his full debt and costs was a secret agreement between the debtor and plaintiff, and made prior to the composition, and as an inducement to it, the evidence is in sharp conflict. The court's conclusions are directly supported, however, by the testimony of two witnesses, and we do not feel authorized to disturb it.

In view of this conclusion as to the facts we find it unnecessary to enter into a detailed discussion of the evidence or of the assignments assailing its sufficiency. The court has in effect found that with the full knowledge and consent of all concerned the plaintiff accepted the goods in satisfaction of the composition. This disposes of all assignments under which the judgment of the trial court is assailed as unsupported by the evidence.

Under the remaining assignments the judgment is assailed on the grounds that the consideration of the note was a secret agreement to prefer the plaintiff to the full extent of his debt, which consideration was founded in fraud upon the creditors, and duress upon the debtor.

We have already found that the transaction was fair and open, and the law seems to be settled that in such case the debtor may pay to one creditor more than another. The court in the cases cited of Willis v. Morris, 63 Texas, 458, Dansby v. Freiberg, 76 Texas, 465, and Chaplin's case, 115 Fed. Rep., 163, hold the vice to be the element of secrecy. It is true in Chaplin's case, *supra*, the duress of the debtor is mentioned as a ground for denying the enforcement of the obligation, but the main ground was the secrecy wherein consisted the fraud upon the other creditors.

Shaw's case, 9 Fed. Rep., 495, decides the exact point, and seems to be a well considered opinion. It was rendered under a former bankrupt law, but we are aware of no provision in the present bankrupt law which would vary the rule. (Bower & Co. v. Mety & Cole, 6 N. W. Rep., 551; 6 Am. & Eng. Ency. of Law, 395.

For the reasons given the judgment is affirmed.

*Affirmed.*