**PETROLIA SUPPLY CO. v. WALKER et al.\***
(No. 10486.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 9, 1924. Rehearing Denied March 29, 1924.)

**1. Compositions with creditors ⊙⟹29(1)—Attempted reservation by creditor joining in composition with firm of rights against former member held fraudulent.**

Composition settlement with firm made upon representation of plaintiff, a creditor, that it was settling upon same basis as other creditors, was defense to note, given by former member prior to composition to better secure plaintiff's claim, notwithstanding attempt of plaintiff in release to firm to secretly reserve rights against maker for unpaid balance; such reservation being fraudulent.

**2. Compositions with creditors ⊙⟹29(1)—Statute requiring written renunciation of right in note held not to enable creditor to enforce note of former partner for unpaid balance.**

Vernon's Ann. Civ. St. Supp. 1922, art. 6001—122, providing that renunciation of right against any party to note must be in writing, will not enable creditor of firm, after entering into composition agreement with' it, to enforce note of former member for unpaid balance of debt pursuant to fraudulent reservation of such right in release to firm.

**3. Compositions with creditors ⊙⟹29(2)—Payments made prior to composition to creditor fraudulently seeking to secure preference held not recoverable back.**

Where plaintiff, entering into composition settlement with firm, fraudulently attempted to reserve rights against former member thereof for unpaid balance of its debt, such member *held* not entitled to recover payment to plaintiff made prior to settlement, and not made to induce ·plaintiff to enter into settlement.

**On Motion for Rehearing.**

**4. Compositions with creditors ⊙⟹27—Debt for which former member of partnership executed note held firm debt within composition with firm.**

Evidence *held* to show that debt to plaintiff, for which former partner executed note, was partnership debt, and so within terms of subsequent composition agreement between firm and creditors, including plaintiff.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Action by the Petrolia Supply Company against P. C. Walker and another, in which defendants filed a cross-action. Judgment for defendants, in main action, and plaintiff appeals. Affirmed.

Cox & Fulton, of Wichita Falls, and Fred T. Arnold, of Graham, for appellant.

Marshall & King and McFarlane & McFarlane, all of Graham, for appellees.

DUNKLIN, J. The Petrolia Supply Company has appealed from a judgment denying it a recovery for the balance due on a promissory note executed by P. C. Walker and wife, and also to foreclose a lien given by them on real estate to secure the payment of the note.

The note sued·on was given for certain supplies which had been theretofore sold and furnished to the Trio Gasoline & Refining Company, a partnership composed of P. C. Walker, E. T. Brian, and L. S. Madlem. After that sale P. C. Walker sold out his interest in the partnership to H. F. Sears and the other members of the firm, in consideration of the assumption by the purchasers of all the partnership liabilities, Sears continuing in the partnership in the place of Walker. The Petrolia Supply Company was notified by Walker of the sale of his interest and his retirement from the firm at the time the transaction was effected. The account for supplies furnished fell due about the time of that transaction, and at the solicitation of the Petrolia Supply Company Walker and his wife executed and delivered the note and mortgage sued on to better secure the debt evidenced by the account. Shortly thereafter the partnership effects of the Trio Gasoline & Refining Company were placed in the hands of J. E. Allen, as receiver, by order of the district court. J. E. Allen was the credit man for the Petrolia Supply Company at the time of his appointment and throughout the period he served as receiver. The receiver, acting under order of the court, sold all the assets of the partnership to A. S. Everest. Everest was un-

willing to purchase the property unless all the creditors of the partnership firm would agree to release all claims against the firm, but offered to buy the assets at 50 cents on dollar of the amount of the debts if the creditors would give such releases. The receiver took up the proposition with the judge of the court in which the receivership was pending, and procured an order allowing him to make the sale upon the conditions mentioned. Thereupon the receiver sold the assets of the firm to Everest, who paid therefor a price equal to 50 cents on the dollar of all debts owing by the firm, and the creditors of the firm executed to him releases in full of all debts they held against the firm. Prior to the sale the Petrolia Supply Company had filed a statutory materialman's lien against all the property and assets belonging to the firm. In filing the account as such lien A. B. Lipscomb, as assistant general manager of the plaintiff, made affidavit that the account for which the lien was claimed was for material furnished P. C. Walker and the Trio Gasoline & Refining Company, a firm composed of P. C. Walker, E. T. Brian, H. F. Sears, and L. S. Madlem. That affidavit was made and lien filed on July 22, 1921, a few days before P. C. Walker sold out his interest in the firm of the Trio Gasoline & Refining Company. The receipt and release given by plaintiff company to Everest is as follows:

"Received of A. S. Everest the sum of $2,137.63 as payment of the account of the Trio Gasoline Refining Company for the sum of $4,275.26, being 50 per cent. of the amount of said account. The above account being secured by a materialman's lien on record at Graham, Young county, Texas, the same is hereby released and the Trio Gasoline Co. nor its property nor A. S. Everest are not to be held hereafter responsible for the payment of anything further on this indebtedness to the Petrolia Supply Company or its assigns. The Petrolia Supply Co. does not release P. C. Walker from the payment of the balance of this indebtedness.
　　　　"Petrolia Supply Company,
　　　　　"By A. A. Kuehn, President."

That release was duly acknowledged before a notary public by Kuehn, the president of the plaintiff company. At the time of the sale to Everest, P. C. Walker also held a claim against the insolvent firm, secured by a materialman's lien, and he likewise executed to Everest a release of that claim and lien in consideration of the sum of $852.-89 paid to him by Everest as part of the purchase price for the firm's assets.

The defendants in the present suit pleaded the settlement so made with the partnership firm of the Trio Gasoline & Refining Company as a full discharge of the note sued on by plaintiff, and that is the controlling question to be determined upon plaintiff's appeal.

One theory upon which the alleged discharge of the note was effected is that by Walker's sale of his interest in the partnership to Sears and other members of the firm and the assumption of all partnership liabilities by the purchasers, with notice to the plaintiff of such sale, the purchasers became the principal debtors to the plaintiff, and Walker a surety only, and that a release of the principal debtors by plaintiff had the effect in law to release him also.

Another contention which was presented in defendant's pleadings is that to allow the plaintiff to recover against Walker after the composition settlement by the firm with all of the creditors on the basis 50 cents on the dollar of their claims would give plaintiff company an undue advantage over those other creditors, and therefore would be a fraud upon them, the fruits of which plaintiff cannot reap.

[1] The testimony showed without controversy that the composition settlement with the creditors was effected principally through the efforts of Mr. R. W. McFarlane, a practicing attorney who represented the Trio Gasoline & Refining Company in the composition settlement, and who was also employed by Mr. Everest, the purchaser, to see to it that he got a clear title to the property purchased by him belonging to the firm free from the claims of all creditors of that firm. As shown by his testimony, which was uncontroverted, Mr. Everest offered for the property a sum equal to 50 cents on the dollar of all claims against the firm, provided all creditors would give a full release of their claims, and that that offer was accepted by all the creditors. His testimony shows that he had some difficulty in getting some of the creditors other than plaintiff to agree to accept 50 cents on the dollar of their claims, but finally succeeded in getting their assent to the proposition by representing to them that plaintiff company, which was the largest creditor, was willing to settle on that basis, as shown by its letter reading as follows:

"Wichita Falls, Texas, Oct. 31, 1921.
"McFarlane & McFarlane, Attorneys at Law, Graham, Texas—Gentlemen: As per our conversation of the 26th in regard to our taking fifty cents on the dollar against the Trio Gasoline Company. We will take fifty cents on the dollar if taken in a reasonable time. We phoned Mr. Anderson, of Black, Sivalle & Bryson, but were unable to get in communication with him; so please advise on the above.
　　"Yours respectfully,
　　　　"Petrolia Supply Company,
　　　　　"By A. A. Kuehn, President."

There was no evidence to show that any of such other creditors knew of any intention on the part of plaintiff company to hold the unpaid balance of the debt as a demand against the defendant P. C. Walker, as indicated in the release which plaintiff gave to Everest at the time the latter purchased

the assets. Nor was there any proof to show that the reservation so made in that release was ever contemplated before the release was given, or that Walker knew of it or assented to it. The note and deed of trust sued on were executed on August 3, 1921, which was long prior to the composition settlement.

The leading decision in this state relied on by appellee is Gourley v. Tyler (Tex. App.) 15 S. W. 731, which involved issues of fact very similar to the present suit. That was a suit brought by Tyler and Simpson for a balance due for goods sold to the partnership firm of Miliken and Gourley. It appeared that Gourley sold all his interest in the partnership assets to Miliken, who, in consideration of the sale, assumed all the partnership debts, and notice of such sale was given to Tyler and Simpson at the time it was made. Thereafter Miliken executed an assignment for the benefit of his creditors. Tyler and Simpson accepted under the assignment, upon Gourley's request so to do and his agreement to pay Tyler and Simpson such portions of the debt as those creditors should be unable to collect from Miliken's assignees in bankruptcy. The facts showed that Gourley's agreement to make up to Tyler and Simpson any balance remaining unpaid by the assignee was a secret agreement unknown to other creditors, and that since it would be a fraud upon other creditors to thus allow Tyler and Simpson to acquire an advantage over them in the settlement the agreement with Gourley could not be enforced. In support of that conclusion, the following was quoted from Bigelow on Frauds:

"An undertaking between a debtor and one of his creditors, in effecting a composition of his debts, by which he agrees to a secret preference of such creditor, renders the whole composition invalid, and the debtor himself can plead such agreement in an action upon the contract of composition."

Also the following from Brandt on Suretyship and Guaranty, par. 23:

"When one member of a partnership retires from a firm, and the remaining members agree with him to pay the firm debts, and these facts are known to the creditor, the member so retiring will be considered in law a surety."

Also the following from the same author (paragraph 19):

"It is the fact of knowledge on the part of the creditors, coupled with certain equitable principles, and not any contract between him and the surety, which raises the equity on behalf of the surety, and it necessarily follows that the equity exists from the time the creditor has the knowledge."

After citing many authorities to the same purport as the quotations made, the court used the following language:

"It must be borne in mind that Gourley was surety alike for all the creditors of Miliken on debts growing out of the firm transactions of Miliken & Gourley. If Gourley was a joint or a principal debtor with Miliken, and had transferred all of his firm property to Miliken for benefit of creditors of said Miliken and Gourley, and afterwards made a composition with appellees by which they were preferred to other creditors, or by such composition were to gain some advantage not enjoyed by the remaining creditors, then it is evident that the composition or agreement would be illegal and nonenforceable."

The following syllabus is a succinct statement of the decision of our Supreme Court in Willis v. Morris, 63 Tex. 458, 51 Am. Rep. 665:

"When a composition agreement has been made between a debtor and all his creditors, to pay them each in discharge of his debt a specified per centum of the amount owing, in a designated time, and there is a secret agreement between the debtor and one of the creditors that the debtor shall execute his note for the unpaid balance of his original debt, and such note is executed, its payment cannot be enforced, for it is tainted with the fraud of the secret agreement."

See, also, Hall v. Johnston, 6 Tex. Civ. App. 110, 24 S. W. 861; Wills v. Tyer (Tex. Civ. App.) 186 S. W. 862.

The uncontroverted testimony of Mr. McFarlane and defendant P. C. Walker shows that prior to the composition settlement Walker had paid to plaintiff $500 on its original claim of $4,275 held against the partnership, and that McFarlane endeavored to get plaintiff to credit its claim with that payment and list the claim for the balance due after allowing that credit, and accept 50 cents on the dollar of that balance. But plaintiff refused to allow the credit, and insisted on listing its claim for settlement in the composition with other creditors at the full sum of $4,275, which was done, and that, too, without the knowledge or consent of the other creditors. That gave plaintiff an advantage over the creditors, in addition to the further advantage now claimed, to collect the unpaid balance of its debt from P. C. Walker, one of the members of the firm. In a note in Ann. Cas. 1914A, beginning on page 845, numerous decisions are collated holding that, in a composition settlement by creditors with an insolvent debtor, an agreement of the debtor with one creditor giving him a secret preference in order to procure his signature to the settlement is fraudulent and void. And on page 849 of the same work a number of decisions are cited which hold specifically that the debtor may successfully plead the fraudulent preference so obtained by one of the creditors as a defense to a suit to collect a promissory note given by him to accomplish such a preferential advantage. And many other decisions, American and English, are noted which hold that

the debtor, although participating in the fraud, may recover back preferential payments made under such an agreement, since by reason of the stress of his financial straits he is not pari delicto with the creditor. However, the decision in Gourley v. Tyler, supra, is to the contrary on that point.

In the note on page 846 the following is quoted from an English case, Fawcett v. Gee, 3 Anstr.:

"It appears that most of the creditors settled with the plaintiff before the defendant did; but that is not material. The defendant authorized the plaintiff to hold out to the others that he was ready to accept the composition. And it is of no consequence whether any of them were actually induced to come in by such representations, or by the productions of the receipt. The principle is that in such cases each must conduct himself openly, and in the manner in which he appears to the world to act. If his conduct is such as has a natural tendency to induce the other creditors to believe that all are acting upon equal terms, and receiving equal shares, as they may be influenced by that appearance, any private agreement for greater benefit to one is a fraud upon the rest, and therefore void."

Also, the following from Solinger v. Earle, 82 N. Y. 393:

"The agreement between the plaintiff and the defendants to secure to the latter payment of a part of their debt in excess of the ratable proportion payable under the composition was a fraud upon the other creditors. The fact that the agreement to pay such excess was not made by the debtor, but by a third person, does not divest the transaction of its fraudulent character. A composition agreement is an agreement as well between the creditors themselves as between the creditors and their debtor. Each creditor agrees to receive the sum fixed by the agreement in full of his debt. The signing of the agreement by one creditor is often an inducement to the others to unite in it. If the composition provides for a pro rata payment to all the creditors, a secret agreement, by which a friend of the debtor undertakes to pay to one of the creditors more than his pro rata share, to induce him to unite in the composition, is as much a fraud upon the other creditors as if the agreement was directly between the debtor and such creditor. It violates the principle of equity, and the mutual confidence as between creditors, upon which the agreement is based, and diminishes the motive of the creditor who is a party to the secret agreement to act in view of the common interest in making the composition. Fair dealing and common honesty condemn such a transaction."

And the following from Frost v. Gage, 3 Allen (Mass.) 560:

"It is quite immaterial that the funds to be distributed among other creditors are not diminished or rendered less available in consequence of the secret agreement. The fraud consists, not in causing any injury to the assets of the debtor, or in reducing the share or interest to which the creditors are entitled under the composition, but in the attempt to induce them to enter into an agreement for an equal dividend on their debts in ignorance of a private bargain, whereby a creditor is to receive an additional sum to that to which he may be entitled in common with all the creditors. Such an agreement vitiates the whole transaction, so that the party can claim no benefit under a composition into which he entered in consequence of such corrupt or fraudulent contract."

Excerpts of like character from many other decisions by American and English courts appear in the same note.

As noted above, the note and mortgage upon which plaintiff sought a recovery were executed prior to the composition settlement made with the creditors of the Trio Gasoline Company, and therefore they were not given for the purpose of enabling plaintiff to reap a preferential advantage over other creditors in that settlement. If such had been true, no recovery could have been awarded thereon. But the note and mortgage were executed to better secure a debt owing by the partnership firm to plaintiff, for which Walker, as a former member of the firm was liable. That entire debt was asserted as a claim against the firm in the composition settlement, and plaintiff accepted 50 cents on the dollar in full settlement of it.

There was no proof that defendant Walker agreed with plaintiff as a part of the composition settlement that he would discharge the unpaid balance of its debt. If there had been such an agreement, and the note sued on had been executed to carry out the agreement, it would have been fraudulent and void under all the authorities cited above. And there is no escape from the conclusion that the same must be said of plaintiff's purpose to accomplish the same preferential advantage over other creditors by an attempted reservation of the right to hold Walker for the unpaid balance of its debt, as expressed in its release of the debt against the firm.

[2] Appellant has cited article 6001, section 122, of Vernon's Texas Civil Statutes 1922, the Negotiable Instrument Act, which provides that the renunciation of right against any party to a promissory note must be in writing unless the instrument is delivered up to the person primarily liable thereon; and the decisions in Engle v. Brown et al., 202 Mo. App. 345, 216 S. W. 541, and Pitt v. Little, 58 Wash. 355, 108 Pac. 941, which gave effect to that statute according to its terms. That statute has no proper application to the present suit. It was not enacted for the purpose of enabling a creditor to profit by his own fraud. Furthermore, Walker's partnership liability to plaintiff was not materially changed by the note and mortgage he executed to further secure it, and the release of that liability by the fraud

practiced on other creditors was a release of his liability in its entirety.

Appellant cites Peugh v. Moody, 107 Tex. 601, 182 S. W. 892, and other decisions to the same general effect, that a surety on a note is not released from liability thereon by the release of the principal at the instance or with the consent of the surety. But those authorities cannot be followed in the present suit, in view of the fraud practiced by appellant in the composition settlement mentioned.

[3] The testimony of McFarlane and Walker to the facts constituting the fraud of plaintiff in said settlement was clearly admissible, and assignments of error to the admission of the same are overruled. And since such fraud was conclusively established the court did not err in peremptorily instructing the jury to return a verdict adverse to appellant's asserted right to recover. The instructed verdict against defendant on his cross-action to recover of plaintiff the $500 which defendant Walker had paid on the partnership debt of the Trio Gasoline & Refining Company was also correct, since the payment was made prior to the composition settlement on a debt for which Walker was liable as a partner, and the payment was not made to induce appellant to enter into the composition settlement. Hence appellee's cross-assignments to the judgment adverse to his counterclaim against appellant is overruled.

The judgment of the trial court is in all respects affirmed.

### On Motion for Rehearing.

[4] Since the general manager of the plaintiff company filed a materialman's lien for the company on the partnership effects, in which he swore that the account for which the note and mortgage herein sued on was executed was for material sold to the Trio Gasoline & Refining Company, and since the deed of trust in controversy taken by the plaintiff recited that the note sued on was for material and supplies furnished to the makers and the Trio Gasoline & Refining Company by the plaintiff, and since J. E. Allen, who was credit man of the plaintiff company while acting also as a receiver, treated and acted upon the account in the same manner, and since P. C. Walker testified to the same effect, and since the plaintiff company entered into the composition settlement with other creditors of the partnership firm, in which they received more than their pro rata part of the partnership

effects, on the claim made by them that the account was owing by the partnership, we fail to perceive how it can be said that the evidence did not conclusively show that the debt for which Walker and wife executed the note and mortgage was a partnership debt.

While, according to some of the testimony of Walker, when he sold his interest in the partnership to Sears, Sears and the other members of the firm all assumed the partnership debts, and, according to other statements by the witness, Sears alone assumed Walker's partnership liabilities, yet we think that that difference is immaterial, since the other members of the firm were already liable jointly and severally for those debts. The material fact was that Sears assumed Walker's liability in part consideration for the sale of Walker's partnership interest in the assets, and plaintiff was notified of that fact.

We think it immaterial whether or not the partnership account fell due at or about the time the note and mortgage in controversy was executed, and whether or not those instruments were executed by solicitation of plaintiff company, although Walker so testified in effect without contradiction, since it was shown without controversy that those instruments were given to better secure the partnership debt of the Trio Gasoline & Refining Company to plaintiff.

Counsel for appellant has misconceived the purport of the opinion written upon original hearing. They interpret that opinion as holding that our decision was based upon the theory that after Walker's sale to Sears of his interest in the partnership, without consent of the other members of the firm, those members of the firm became the principal debtors and Walker only a surety therefor. While we mentioned that as one of the contentions of Walker, we did not base our decision upon that theory, as clearly appears from a careful reading of the opinion. Our decision was based solely upon our conclusion that the record showed without controversy that the composition settlement was with the creditors of the partnership firm, and made upon representation of the plaintiff that it was settling its debt upon the same basis that all other creditors were settling, and that to allow the plaintiff later to reap additional benefits through a secret and undisclosed intention to hold Walker for the balance of its debt would be a fraud on such other creditors, which the courts will not countenance.

Motion for rehearing is overruled.